[Civ. No. 3277. Third Appellate District.—July 15, 1927.]

AUGUSTA WERNER, Appellant, v. CHARLES J. BRYDEN, Respondent.

George A. Connolly for Appellant.

W. H. Carlin and W. P. Rich for Respondent.

FINCH, P. J.—This is an action to recover damages for breach of promise of marriage and seduction under such promise. The case was tried before a jury, which returned a verdict in favor of defendant. In due time the plaintiff moved for a new trial and the court made and entered the following order:

"The Court is constrained to hold that the evidence is insufficient to justify the verdict of the jury; that plaintiff has made out a case and is entitled to recover a reasonable sum as damages; that $1500 is a reasonable sum; and that a new trial should be granted unless defendant shall consent to the entry of judgment in favor of plaintiff for said sum of $1500.

"Accordingly it is ordered, adjudged and decreed that if the defendant shall, on or before March 21st, 1925, file herein a written stipulation consenting to the entry of judgment in favor of plaintiff for the sum of $1500 (each party to pay her or his own costs thus far incurred) the motion for a new trial shall be and in such event is hereby denied; and upon the failure of defendant to file such stipulation and consent on or before said date, to-wit: Saturday, March 21st, 1925, then and in that event said motion for a new trial shall be and the same is hereby granted."

On the day this order was filed the defendant filed his stipulation that "judgment may be forthwith entered in favor of plaintiff and against defendant in this action for the sum of $1500, each party to the action to pay her and his own costs incurred to date." The plaintiff has appealed from the judgment.

The defense set up in the answer is that the defendant never promised to marry the plaintiff. That was his sole defense at the trial. If he made the promise, he undoubtedly broke it, because he married another woman prior

to the commencement of the action. It is a necessary inference from the verdict, therefore, that the jury found that the alleged promise was not made. Having so found, of course, the jury did not determine the amount of damage suffered by the plaintiff. In the order disposing of the motion for a new trial, the court states that "the evidence is insufficient to justify the verdict," and that "plaintiff has made out a case and is entitled to recover a reasonable sum as damages." In the absence of any such statement, the facts so stated are necessarily inferred from the mere making of the conditional order. Being convinced that substantial justice was not done by the verdict, it was the duty of the trial court to make an unconditional order granting a new trial. Having "made out a case" and being "entitled to recover a reasonable sum as damages," plaintiff had the constitutional right to demand that a jury assess such damages. The power of a trial court to make the denial of a defendant's motion for a new trial conditional upon the plaintiff's consent to a reduction in amount of an excessive verdict in his favor has long been upheld in this state. In *Adamson* v. *County of Los Angeles,* 52 Cal. App. 125, 131 [198 Pac. 52], it was held that, under the circumstances there stated, it was within the power of the trial court to make the denial of the defendant's motion for a new trial in a condemnation suit conditional upon the plaintiff's consent to increase the amount awarded the defendant for the property taken. Similar orders have been upheld in several other states. In *Eaton* v. *Jones,* 107 Cal. 487, 491 [40 Pac. 798], one of the findings was "in direct conflict with the evidence and admission of defendant." The court said: "That this was a mistake is quite apparent, and when on the motion for a new trial, the court discovered the error it very properly called upon defendant to consent to its correction with the alternative of granting a new trial upon a refusal." But no case has been discovered in which an order such as that in question here has been upheld. In *Shanahan* v. *Boston & N. St. Ry. Co.,* 193 Mass. 412 [79 N. E. 751], the plaintiffs sued to recover damages for personal injuries. The jury returned a verdict for the defendant and the plaintiffs moved for a new trial. The court made an order "granting the motions unless on or before a certain date the defendant consented

to the entry of judgment in favor of the plaintiff in the first case of $200, and in the second for $50. The defendant consented to the terms of the order and the plaintiffs appealed. The higher court said: "The judicial action taken after the determination had been reached to set the verdicts aside, substituted for the verdict of a jury a finding by the judge which the plaintiffs were not compelled to accept, nor could they thus be deprived of their constitutional right. . . . These cases are to be distinguished from those in which an adverse verdict having been returned the defendant asks for a new trial, and the option is given to the plaintiff upon filing a *remittitur* in excess of a certain sum to retain the verdict, or otherwise the motion will be granted. In such cases the question of liability has already been determined in the plaintiff's favor." In a similar case it is said: "By annexing a condition that defendant should pay plaintiff $300, the trial court has made it manifest that in his opinion substantial justice was not done in the premises. We cannot, however, agree with him as to his right to annex such a condition. It is equivalent to the trial court himself assessing the damages. This is the province of the jury. This court has frequently sanctioned the reduction of verdicts where they were larger than the law would justify, but the right of a trial court to reduce a verdict under such circumstances would not carry with it the right to assess damages where the jury has refused to assess any. The plaintiff has the right to insist that the jury assess the damages." (*Goldsmith* v. *Detroit J. & C. Ry.*, 165 Mich. 177 [130 N. W. 647].)

The evidence shows, without substantial conflict, that the defendant promised to marry the plaintiff. In the early summer of the year 1921 the defendant was in the vicinity of the Feather River Inn, near Blairsden, Plumas County, where he had charge of his father's flocks of sheep, not as the herder thereof, but rather as general manager and overseer of the herders. The plaintiff was employed as a waitress at the Feather River Inn. The parties met at a dance on June 5th, and an immediate attachment sprung up between them. The plaintiff testified that they became engaged to marry about two weeks later and that the alleged seduction took place about a month after the first meeting. The defendant testified that the sexual relations

between him and the plaintiff commenced on the second day of their acquaintance and continued throughout the summer. At the end of the summer season the plaintiff went to San Francisco and at a later time the defendant went to his father's home in Yuba County. The parties occasionally met after the plaintiff had gone to San Francisco and many letters passed between them. The plaintiff kept the defendant's letters, but he testified that he destroyed hers. He testified that each sent the other about fifty letters. His letters and his testimony in relation thereto are too long to be given even in substance, but a few quotations will indicate their general character. On cross-examination he was examined in part as follows: "Q. I will call your attention to this language . . . in a letter postmarked Marysville, January 13, 1922, 'I am awfully lonesome here, Peg, and God, how I wish that you were here with me for good as my wife and sweetheart in our own little home. I am always thinking and dreaming of it, dear, and I am working for it too, for I love you.' At the time when you wrote those words to Miss Werner, hadn't you already asked her to be your wife? A. No, not any more than I was asking her or letting her know I wanted to marry her in that letter. . . . Q. Were you working to bring that about? A. I suppose I had that end in view. . . . Q. I am reading now from plaintiff's exhibit No. 24, contained in an envelope postmarked Honcut, January 23, 1922. . . . The letter commences, 'Friday night, Dearest Peg, your letters of Tuesday night and Wednesday night arrived today, dear, and I have just finished reading them again. You have clearly outlined my idea of Heaven, Peg, when you said you would like to be here to clean me up, feed me, and put me to bed after a hard day's work.' Had Miss Werner written a letter to you in which she used the substance of those words? A. I think she had, yes. Q. Mr. Bryden, at the time that you wrote that letter, were you intending to make Miss Werner your wife? A. I think so. Q. I now call your attention to the reference to your father contained in this same letter, . . . 'I can't say whether Dad knows that I am in love with you, dear, for he never says a word about my personal affairs, but he *will* know it before another year goes by.' . . . Had Miss Werner asked you shortly before you wrote this letter whether or not your

father knew that you were in love with her? A. I think so. Q. And what did you mean when you said to her, 'But he will know it before another year goes by?' A. I felt sure she would marry me later on when financially so that I could ask her. . . . You further say, 'Of course, he don't know you love me, how could he? I can hardly believe it myself.' Had you told your father by this time whether or not Miss Werner loved you? A. I never discussed love, my love for her or her love for me, with him. . . . Q. I will call your attention to the following portion of the . . . letter (dated January 28, 1922): 'You could make me very happy, dear, if, as you say, you could enjoy me most that way. That is the only way to a real, true, lasting happiness for me and if I could make you happy also, our happiness would be insured.' . . . I wish you would state to the jury now what you referred to. . . . A. I don't remember exactly. I think it was some reference that led me to understand that we might be married. . . . A lot of my letters made no direct reference to marriage, but hinted at it, in other words, but I think it was probably some favorable answer to my previous letter that brought that out. . . . Q. I now call your attention to a letter . . . which I have taken from an envelope postmarked Honcut, I think, February 10, 1922, 7 p. m., and I draw your attention to the following language: . . . 'I am just as lonesome as ever, dear, and I am sure now that I will never stop wanting you and longing for you. God, how I would like to have a place I could call home and to have it feel like home with you there, dear, to make it so. I want that above everything else in my whole world, because, dearest, I will never stop loving you as long as you will let me.' . . . When you wrote those words, were you intending, or hoping, or wishing, or expecting to make Miss Werner your wife? A. Yes, all of those, . . . Q. I call your attention to the last paragraph in that letter (February 22, 1922), 'I love you, dear, with all my heart. Do you? You never said one single thing in your last letter about it, if you do, and it made me feel rotten, dear.' I want you to tell the jury now whether or not, if Miss Werner did not state to you in every letter that she wrote that she loved you, that you felt badly about it? A. That is what I would write back and tell her I suppose I felt badly, yes. . . . Q. You spent Christmas afternoon with Miss Werner, on Christmas day

in 1921, in the company of your mother, your sister and your sister's husband, in Oakland, at the home of your mother and sister, did you not? A. Yes, sir. . . . Q. (Quoting from letter of May 11, 1922), 'Yes, Peg, old dear, you are going to see lots of me this summer and I am wishing all the time that the time were here for I am very lonesome for you.' When you wrote that language to Miss Werner, did you mean it? A. Well, I meant it, yes. I meant it in a certain way. . . . I mean I was anxious to be with her. . . . I wanted to go on as we had gone on in the summer before. . . . I never intended to make her my wife after that time. . . . Q. Did she not go with you to Sacramento after you wrote that letter to her? A. I think so. . . . Q. Did she not, after you had written that letter to her, Mr. Bryden, go with you to Sacramento and live with you as your wife? . . . A. Yes. . . . Q. When was it you ceased to hope or expect to make Miss Werner your wife? A. It was very soon after March 17th. . . . I felt a little different towards Miss Werner and I think she felt a little different towards me after that time. And my father's death had a good deal to do with it, too. It made me look at things in a little different light. . . . Q. Your father's death on April 10, 1922, made you realize more and more you didn't love Miss Werner? Is that it? A. That's it, yes." The defendant's deposition was taken prior to the time of the trial. The following appears therein: "Q. Did you ever promise to marry Miss Werner? A. No. Q. You never promised nor agreed to marry her? A. Well, that is a kind of a hard question to answer. Will you let me answer it the way I want to? Q. Certainly, answer it in your own way. A. She never asked me to marry her, consequently I never agreed to marry her."

Not only from the testimony of the plaintiff, but from that of the defendant and from references in his letters to statements contained in hers, it appears that her expressions of love for him were as ardent as his for her. The statements in his letters and his admissions as a witness at the trial so clearly established the engagement of the parties to marry that his mere assertion on the witness-stand that they were not so engaged does not create a substantial conflict in the evidence. It clearly appears that the trial court could have come to no other rational conclusion than that the evidence is insufficient to justify the verdict. The question is not

whether the amount fixed by the court is a reasonable sum to be allowed as damages, but the plaintiff has the constitutional right to have such damages assessed by a jury.

Respondent makes the point that the appeal is ineffective. The contention is so utterly devoid of merit that it is deemed unnecessary to discuss it.

The judgment is reversed.

Glenn, J., *pro tem.*, and Plummer, J., concurred.