[L. A. No. 17283. In Bank.—December 2, 1940.]

AUSTIN H. TAYLOR et al., Appellants, v. RUPERT POLE et al., Respondents.

Richard A. Dunnigan and Burton B. Crane for Appellant.

Nourse & Jones and Paul Nourse for Respondents.

THE COURT.—Plaintiffs, husband and wife, brought this action to recover for injuries to person and property sustained when the automobile in which they were riding was struck by a machine driven by Rupert Pole, a minor. The accident occurred on July 22, 1937. Plaintiffs' car was stopped in traffic on a steep grade, and was struck from the rear by the automobile driven by defendant Pole, traveling at a rate of from ten to twenty miles an hour. The trial took place in June, 1938. The jury found for the plaintiffs, assessing Mae M. Taylor's damages at $650 and ''Austin H. Taylor's damages at $No.'' Plaintiffs' motion for a new trial was denied as to Mrs. Taylor, and conditionally ''denied as to Austin H. Taylor in the event defendants pay into court $117.64 for the plaintiffs; otherwise granted as to him.'' The defendants paid the required sum into court.

Both plaintiffs appealed from the judgment. Mrs. Taylor contends that the award to her is so grossly inadequate as to compel the conclusion that the verdict was the result of passion and prejudice, and that the court erred in its instructions to the jury. She is a woman over fifty years of age, and the evidence discloses that she was severely injured in the accident.

According to her testimony, and that of witnesses on her behalf, she sustained bruises and contusions of the shoulder, arm, and side, a laceration several inches in length on the left leg, and a bump on the forehead about the size of a hen's egg. The force of the collision caused her to lose consciousness for a short period, and she was taken to the receiving hospital for temporary treatment. A few hours later she was removed to her home, where she was confined to her

bed for six weeks or more. She was attended regularly by her family physician and was examined by medical experts called in by him. Her prior history showed that between the ages of four years and twenty years she had frequently had hysterical seizures during which she sometimes frothed at the mouth, and on one occasion she fell and broke her arm. In 1911 or 1912 these spells disappeared and she enjoyed fairly good health, except that on one occasion, about two years before the accident, she was in a semi-conscious condition or coma for about five days. She had previously had an abdominal operation. She had also been troubled with nervous indigestion, and had been treated for gastric ulcers and other ailments. During the year following the accident and up to time of trial of the cause she suffered from severe headaches and was in a highly nervous condition. Her eyes crossed spasmodically and could be brought to a focus only by voluntary action of the muscles. Her hearing was impaired, and her teeth injured. She suffered from numbness or anesthesia of her left side, including her arm and leg. The movement of her left arm was limited and painful, and her left foot dropped, causing her leg to drag when walking. Some of these injuries, particularly those to the leg and foot, were expected to be permanent.

Nine medical experts called by the plaintiffs, five medical experts called by the defendants, and several lay witnesses testified to the nature and severity of Mrs. Taylor's injuries, their probable permanence, and the extent, if any, to which her condition might be attributable to pre-existing disease, or aggravation thereof by the accident, rather than directly to injury. There was a question as to whether Mrs. Taylor had actually sustained a blow on the head, or brain injury. No record was made at the receiving hospital of a lump on her forehead. There was also a question as to whether the difficulty with eyes and teeth and certain other distressing conditions had existed prior to the accident. Was Mrs. Taylor malingering or exaggerating her disabilities? To what extent, if any, had the accident aggravated her physical troubles, nervousness, and tendency to have hysterical seizures?

On all of these issues, the testimony of the expert witnesses was conflicting. Notwithstanding this, however, their evidence as a whole showed without contradiction that Mrs. Taylor was badly hurt in the collision. The fact of the lacer-

ation of her leg was undisputed, and the condition resulting from it which caused her left foot to drop and her leg to drag was noted by all of the physicians who examined her subsequent to the accident. They differed only in their views as to the probable permanence of this disability. The medical experts for defendants expressed the opinion that the condition was due to severance of the peroneal nerve or muscle at the point of laceration, and that rejuvenation of the nerve seemed to be in progress. One of them stated that hysterical reaction as well as severance of the nerve was a factor to be considered as a cause of the complete foot drop. Another said that he had measured the left leg and found it to be an inch smaller than the right.

Two of these witnesses testified that the hysteria which Mrs. Taylor experienced at periods both prior to and after the accident, is a real functional disease, a characteristic symptom of which is organic numbness or loss of sensation. In this type of condition, one of them explained, any stress suffered by the patient is liable to cause a recurrence of hysterical seizures or an aggravation or exaggeration of incapacity during a period of litigation.

It thus appears that without considering plaintiffs' evidence as to the severity of Mrs. Taylor's injuries and the extent of disability caused by the accident, the testimony of defendants' expert witnesses, standing alone, is sufficient to show that her leg was lacerated in the collision, with a resulting prolonged impairment of function which may or may not be permanent, and that the hysteria to which she was susceptible was aggravated to a degree, however slight. The amount of aggravation no physician would attempt to define with precision.

Such a record might well justify the conclusion that the award made by the jury in the sum of $650 was inadequate as a matter of law, particularly in view of the fact that in this state definite disturbances of the nervous system caused by mental shock, excitement, and so on, are classed as physical injuries and are recognized elements of damage. (*Dryden* v. *Continental Baking Co.*, 11 Cal. (2d) 33, 39 [77 Pac. (2d) 833]; *Sloane* v. *Southern Cal. Ry. Co.*, 111 Cal. 668 [44 Pac. 320, 32 L. R. A. 193]; 8 Cal. Jur., p. 772.) The evidence shows that following the accident Mrs. Taylor incurred expenses of over $2,800 for medical and nursing care, and al-

though some of these expenses were unquestionably incurred for the treatment of pre-existing disease, a portion of them no doubt constitute special damages suffered as a result of the accident.

■■ It is, however, unnecessary to determine the issue of inadequacy of the verdict, for we deem that defendants' instruction No. 16–A, one of several questionable instructions given by the trial court on the subject of damages, was so clearly prejudicial as to require a reversal of the judgment. It reads: "You are instructed that if you find that because of Mrs. Taylor's pre-existing conditions, whatever they may have been, there was a change in her subsequent to the accident, and further find that such change was due to a combination involving aggravation of her then condition plus exaggeration on her part of the aggravation, and if you find that there is no testimony from which you can determine how much is aggravation and how much is not, then the plaintiffs have failed to establish by a preponderance of the evidence the amount of aggravation, and in such event you cannot arbitrarily fix the aggravation but will resolve the issue in favor of the defendant and against the plaintiffs because of plaintiffs' failure to establish by a preponderance of the evidence."

The paramount vice of this instruction is that it required the jury to undertake what no medical expert would even attempt, and what some tacitly admitted could not be done, that is, to sunder the "combination involving aggravation of her then condition plus exaggeration on her part of the aggravation", and to "determine how much is aggravation and how much is not", or "the amount of aggravation"; if they found no testimony from which this determination could be made, then, they were instructed, they must resolve the issue against the plaintiffs.

The instruction also ignored the fact that where there is an aggravation of the disease of hysteria induced by accident, an exaggeration of disability is itself a characteristic condition or symptom of the disease. In such case a patient's exaggeration of incapacity may be classed in whole or in part as an aggravation of disease caused by the accident, or in whole or in part as due to deliberate malingering or fraudulent simulation of disability. The issue is one of fact.

Obviously there is no rule by which either expert or laymen may measure the precise degree, if any, to which a pre-

existing pathological condition has been aggravated, or to which the patient has exaggerated the aggravation. The mental elements which must be taken into account with other elements in determining a just admeasurement of compensatory relief afford no definite or certain criterion by which the amount to be assigned to the one item or the other may be ascertained. (*Eldridge* v. *Clark & Henery Const. Co.*, 75 Cal. App. 516, 535 [243 Pac. 43].) From the very necessities and uncertainties of the situation, the segregation of the items which combine to form the full measure of actual injury is a matter for the exercise by the jury of its unbiased judgment, and in assessing the damages it is accorded a "wide latitude" and an "elastic discretion." (*Knight* v. *Fitch*, 22 Cal. App. (2d) 252, 254 [70 Pac. (2d) 976].) As stated in *Eldridge* v. *Clark & Henery Const. Co., supra*, at pp. 536, 537: " . . . In cases of this class there is no scale by which the damages are to be graduated with certainty. They admit of no other test than the intelligence of a jury, governed by a sense of justice. . . . "

In the instruction here under discussion the court not only placed an unwarranted burden of proof on plaintiffs in requiring an exact measurement of indefinite elements of injury, but at the same time it misled the jury because of its failure to define properly the broad standard by which they might, in the exercise of their sound discretion and good sense, assess the amount of damages to be awarded. (*Lee* v. *Southern Pac. R. R. Co.*, 101 Cal. 118, 121 [35 Pac. 572]; *Knight* v. *Fitch, supra*.) These defects were not cured by the remainder of the charge, and unquestionably the error was so prejudicial as to entitle Mrs. Taylor to a retrial of the issue of damages.

The appeal of Mr. Taylor is also well taken. As heretofore stated, by the verdict the jury found for him, but assessed his damages at "$No." This was clearly erroneous, as witness the fact that the court conditioned its denial of motion for new trial upon payment into court by defendants for plaintiffs of the sum of $117.64, the amount expended by Mr. Taylor for repair of his automobile.

Mr. Taylor, who is a chiropractor, testified that in the accident his upper back was wrenched and the nerves of his left arm were strained. For a few days he was unable to use the arm, and he suffered pain for about two months. He re-

ceived no medical attention, but rendered treatment to himself with the aid of his office help. At the time of trial he had made a complete recovery. This testimony was not contradicted, but neither was it corroborated. Mr. Taylor also testified to the amount of damage done to his car. This testimony was likewise uncontradicted, and it was corroborated by the introduction in evidence of the repair bill in the sum of $117.64.

Defendants contend that it is obvious that the jury, in assessing Mr. Taylor's damages as "$No", after finding in his favor, discredited his statement that he suffered personal injuries, and inadvertently overlooked the undisputed item of property damage. Hence, say defendants, the error in the verdict was completely cured by the trial court's action in ordering payment of $117.64, the exact amount of the property damage, as a condition of denial of motion for new trial.

There is a conflict of authority as to the extent of the power of a trial court to assess damages or increase the amount of an inadequate award made by jury verdict, as a condition of denial of motion for new trial. (See *Adamson* v. *County of Los Angeles,* 52 Cal. App. 125 [198 Pac. 52]; *County of Los Angeles* v. *Rindge Co.,* 53 Cal. App. 166 [200 Pac. 27]; *San Francisco* v. *Superior Court,* 94 Cal. App. 318 [271 Pac. 121]; *Werner* v. *Bryden,* 84 Cal. App. 472 [258 Pac. 138], and review of authorities therein; *Secreto* v. *Carlander,* 35 Cal. App. (2d) 361 [95 Pac. (2d) 476]; 28 Cal. L. Rev., note, p. 533 et seq.; 61 A. L. R., note, p. 194 et seq.; *Dimick* v. *Schiedt,* 293 U. S. 474 [55 Sup. Ct. 296, 79 L. Ed. 603, 95 A. L. R. 1150]; McCormick on Damages, sec. 19, pp. 82, 83; 44 Yale L. J., p. 318 et seq.) The question need not be here determined because even the application of the broadest rule to which we have been cited would not sustain the trial court's action in the present cause. This is so because in ordering the increase to cover the item of property damage the court failed to take cognizance of the fact that Mr. Taylor also sought compensation for personal injuries.

Had only the issue of property damage been before the jury, the trial court might have been justified in concluding that the omission of that item from the verdict was pure inadvertence. On the other hand, had only the issue of damages

for personal injuries been submitted, the conclusion might have been warranted that the jury's failure to award even nominal damages was the result of its failure to credit Mr. Taylor's uncorroborated statement that he was hurt. The fact is, however, that both elements were involved, and the trial court was not entitled to indulge in a dual speculation with respect to them. It could not infer that the failure to make an award for property damage was the result of oversight, and by the same token infer that the failure to make an award for personal injuries was the result of discrediting Mr. Taylor's testimony. No severance of issues was made upon the trial or on submission of the cause to the jury. In assessing Mr. Taylor's damages at naught, therefore, the jury made a finding with respect to both property damage and personal injuries. This finding, being without support in the evidence, was erroneous in its entirety. The trial court, in ruling on motion for new trial, could not split the issue of damages and presume that the jury's conclusion was partly right and partly wrong, and by ordering an increase to cover property damage, substitute its own finding for the verdict.

Although a reversal of the judgment both as to Mr. and Mrs. Taylor is required, the retrial may be limited to the issue of damages. No appeal from the judgment was taken by defendants. The implied finding of the jury that the accident was the result of the negligence of defendant Pole had overwhelming support in the evidence and is conclusive.

The judgment is reversed, and the cause is remanded for a new trial solely upon the issue of the amount of damages, and the trial court is directed, upon settlement of that issue, to enter judgment in favor of the plaintiffs for the amount so found.

Rehearing denied.