[Civ. No. 50315. Second Dist., Div. Five. Nov. 21, 1977.]

JUDY NG, Plaintiff and Appellant, v.
KENDALL L. HUDSON, Defendant and Respondent.

## COUNSEL

Clifford J. Peterson for Plaintiff and Appellant.

Reilly, Holzhauer, Denver & McLain and Leon Small for Defendant and Respondent.

## OPINION

**STEPHENS, Acting P. J.**—Plaintiff Judy Ng appeals from a judgment denying her damages, entered on an adverse jury verdict, in her action for personal injuries. She argues that the judgment should be reversed because (1) the verdict was contrary to the evidence; (2) the court erroneously and prejudicially refused a requested instruction; and (3) the court allowed the jury to consider certain irrelevant yet prejudicial evidence. We have concluded that the judgment should be reversed because of the refusal to give a requested instruction, but that plaintiff's other arguments are without merit.

On May 23, 1974, defendant Kendall L. Hudson's automobile struck the rear of one driven by plaintiff Judy Ng. Defendant subsequently admitted that his negligence caused the accident, and the trial proceeded solely on the issue of damages. Plaintiff claimed that as a result of defendant's negligence, she sustained substantial neck and back injuries with resulting pain and suffering, medical expenses, and disability from work. Defendant denied having proximately caused plaintiff any injury.

Much of the most important expert medical testimony was conflicting as to the nature and source of plaintiff's condition. Plaintiff's treating physician testified that plaintiff had suffered small chip fractures and a ruptured disc in the c-5, c-6 intervertebral disc space of the neck. He stated his opinion that this condition had resulted from the automobile collision. He further indicated that plaintiff would probably suffer permanent pain and disability. In contrast, defendant's expert, Dr. Sarrian, testified that the available X-rays indicated that the c-5, c-6 disc

abnormality was a preexisting condition—either a disc "degeneration" beginning approximately five years before the accident, or a "ruptured disc" stemming from some injury at least two years before the accident. He stated that he doubted that the accident in question had any adverse effect upon her condition; nevertheless, he admitted that her condition was especially vulnerable to further injury.

After Dr. Sarrian testified, defendant rested his case. After brief rebuttal testimony by the plaintiff, the court adjourned. Subsequently, in judge's chambers, plaintiff's counsel orally requested that the jury be instructed with BAJI No. 14.65, which deals with aggravation of preexisting conditions. Plaintiff's request was obviously a response to Dr. Sarrian's testimony that plaintiff's condition existed before the accident.

The trial judge denied this request and instead gave general instructions on proximate cause; these included BAJI No. 2.61 (admitted liability), BAJI No. 3.75 (definition of proximate cause), and BAJI No. 14.00 (compensatory damages). In substance, these instructions directed the jury to compensate plaintiff for harm or loss "proximately caused" by plaintiff's negligent act; proximate cause was defined as ". . . a cause which, in natural and continuous sequence, produces the injury, and without which the injury would not have occurred." (BAJI No. 3.75.)

**( )** The key question on this appeal is whether the failure to give the proffered instruction on aggravation was prejudicial error. It is settled that each party to an action has a right to have the jury instructed on all of his theories of the case which are supported by the pleadings and the evidence. Refusal to give an instruction adequately covering a party's theory which is supported by substantial evidence is inherently prejudicial error. (*Phillips* v. *G. L. Truman Excavation Co.* (1961) 55 Cal.2d 801, 807, 808 [13 Cal.Rptr. 401, 362 P.2d 33]; *Fish* v. *Los Angeles Dodgers Baseball Club* (1976) 56 Cal.App.3d 620, 641 [128 Cal.Rptr. 807]; *Godwin* v. *LaTurco* (1969) 272 Cal.App.2d 475, 482 [77 Cal.Rptr. 305].) In deciding whether a trial court erred in refusing a requested instruction, the evidence should be viewed in a light most favorable to the appellant. (*Sills* v. *Los Angeles Transit Lines* (1953) 40 Cal.2d 630, 633 [255 P.2d 795]; *Fish* v. *Los Angeles Dodger Baseball Club, supra,* at p. 634.) We have concluded that there was substantial evidence to support plaintiff's theory that the accident aggravated an existent yet dormant vertebral disc condition in plaintiff, causing it to become painful and disabling. Therefore, the trial court's refusal to give an instruction covering that theory was prejudicial error.

# I

## INTRODUCTION

At the outset, certain matters which are not material issues in this case should be mentioned at least briefly, as they contribute to a clearer picture of the case.

■ That BAJI No. 14.65 is an accurate statement of the law has not been questioned. The instruction simply restates the principle that a tortfeasor may be held liable in an action for damages where the effect of his negligence is to aggravate a preexisting condition or disease. Plaintiff may recover to the full extent that his condition has worsened as a result of defendant's tortious act. (*Taylor* v. *Pole* (1940) 16 Cal.2d 668, 672 [107 P.2d 614]; *Perry* v. *McLaughlin* (1931) 212 Cal. 1, 11 [297 P. 554]; *Campbell* v. *Los Angeles Traction Co.* (1902) 137 Cal. 565, 568 [70 P. 624]; *Hagy* v. *Allied Chemical & Dye Corp.* (1953) 122 Cal.App.2d 361, 367 [265 P.2d 86].) That a plaintiff without such a condition would probably have suffered less injury or no injury does not exonerate a defendant from liability. (*Rideau* v. *Los Angeles Transit Lines* (1954) 124 Cal.App.2d 466, 471 [268 P.2d 772].)

■ Nor has it been urged that the issue of aggravation was adequately covered by other instructions given to the jury. As previously stated, the court instructed the jury that plaintiff should recover damages for injuries "proximately caused" by defendant. The instruction on compensatory damages (BAJI No. 14.00 (1975 rev. ed.) states as follows: "If, under the court's instructions, you find that plaintiff is entitled to a verdict against defendant, you must then award plaintiff damages in an amount that will reasonably compensate her for each of the following elements of claimed loss or harm [subject to being reduced, as you will be instructed, if you should find that the plaintiff was contributorily negligent,] *provided that you find that such harm or loss was [or will be] suffered by her and proximately caused by the act or omission* upon which you base your finding of liability. . . ." (Italics added.)

While the issue of aggravation of preexisting conditions is often regarded as a particular application of the principles of proximate cause, the term proximate cause appears to offer little guidance in dealing with the issue. The court also gave BAJI No. 3.75, which purports to define proximate cause. This instruction shed no additional light on the issue of aggravation and was a potential source of confusion. It stated: "A

proximate cause of an injury is *a cause which, in natural and continuous sequence, produces the injury, and without which the injury would not have occurred.*" (Italics added.) This general definition of proximate cause did not go into the more specific circumstances of this case, and it is doubtful that a jury could deduce from it the rule that an act which worsens an already existent abnormality may be considered a "proximate cause of the harm." It is by no means self-evident that an act which precipitates a flare-up of a preexisting condition should be considered a "cause which, in natural and continuous sequence, produces the injury." Thus, general instructions on proximate cause were not sufficient to inform the jury on the more specific issue of aggravation of preexisting conditions.

■ One other matter should be discussed. Plaintiff's request for BAJI No. 14.65 was tendered orally, not typewritten. Plaintiff thereby failed to fulfill one of the requirements of section 607a of the Code of Civil Procedure, which directs in part that "[a]ll proposed instructions shall be typewritten, each on a separate sheet of paper." The trial judge, however, failed to indicate for the record any reason for refusing plaintiff's request for the instruction.[1] After examining the circumstances, we conclude that the judge waived the defect in tender, and refused the proffered instruction on its merits.

Assuming that an instruction may be refused because it was tendered orally, it is nevertheless within the discretion of the court to waive defects in the tender of proposed instructions. In *Young* v. *Carlson* (1954) 128 Cal.App.2d 743, 746 [276 P.2d 23], the court held that it was within the discretion of the judge to either accept or refuse instructions tendered after the time limit imposed by section 607a. The judge should have similar discretion to entertain oral requests for instructions where justice and reason permit.

Clearly a waiver of the requirement that proposed instructions be typewritten was reasonable under the circumstances. Defendant's expert witness, Dr. Sarrian, had just testified that, in his opinion, plaintiff's condition was preexisting—thereby raising a significant issue. After some

---

[1] Instead the judge entered a minute order, dated November 15, 1976, which stated: "In chambers, out of the presence of the jury, oral request was made on July 15, 1976, to include jury instruction 14.65. Said oral request was denied." Rule 229c of the California Rules of Court requires that the judge endorse upon the proposed instruction the reason for refusal. Since plaintiff delivered his proposal orally, the judge could not strictly comply. Nevertheless, he could have substantially complied by indicating for both the plaintiff and the record his reason for refusal. This would have achieved the clear purposes of the rule—to supplement the record and inform the parties.

brief rebuttal testimony by the plaintiff wherein she reiterated that she had never been injured or ill prior to the accident, the court adjourned. It was then, in the judge's chambers, that plaintiff's counsel requested BAJI No. 14.65 on aggravated injuries. The statutory deadline for requesting instructions on issues raised by the evidence is before the commencement of oral argument, which was scheduled for the next morning. It was understandable that plaintiff's attorney would take this opportunity to gain court approval for the instruction.

It is also apparent that the oral request for BAJI No. 14.65 could have caused no more than trivial inconvenience to the court. The Los Angeles County Clerk has available loose sheet forms of BAJI instructions for use in cases on trial. (BAJI Instructions (5th rev. ed. 1969) p. xv.) In addition, most judges keep a copy of BAJI Instructions in their chambers for reference. Thus, typed or printed copies of the instruction were highly accessible. Further, had the judge informed plaintiff that the request was unacceptable because tendered orally, plaintiff could easily have produced a properly typewritten copy the next morning before oral argument was to begin. The plaintiff's failure to do so strongly suggests that the judge did not inform plaintiff that oral tender was insufficient. It has been held that trivial and easily correctable errors in proposed instructions are not permissible grounds for refusal of instructions, where the effect is to leave the jury uninformed on a material issue. (*Laird* v. *Moss* (1959) 173 Cal.App.2d 48, 53 [342 P.2d 463].)

Thus, where, as here, the reason for refusal of a proposed instruction is not stated for the record and where the judge's waiver of an imperfect tender would have been reasonable under the circumstances, we presume that the judge waived imperfect tender and refused the instruction on its merits.

II

### The Contention That Plaintiff's Testimony Concerning Her Condition Before The Accident Should Have The Effect Of Preventing Her From Asserting Error For Failure To Instruct On Aggravation Is Without Merit.

Defendant urges that plaintiff contradicts her own previous testimony by now asserting prejudicial error for failure to instruct on aggravation. The argument is stated by defendant as follows: "Appellant

testified during the trial that she was *not* [italics in original] suffering from any disability or condition prior to the subject accident . . . . Yet, appellant is now belatedly asserting that *an instruction relating to previous disability* should have been given; in effect contradicting her own testimony." (Italics added.)

It is true that under the doctrine of judicial estoppel a party who has assumed a particular position in litigation may under some circumstances be estopped from taking an inconsistent position to the detriment of the other party. Defendant has not cited any cases supporting application of this doctrine to the present case. The proper application of this doctrine is at best uncertain; nevertheless, certain limitations on it are clear. The estoppel cannot be invoked where the first position was not clearly inconsistent so that holding one position necessarily excludes the other. Nor can it be asserted where the first position was based upon ignorance of facts. (*Associated Creditors' Agency* v. *Wong* (1963) 216 Cal.App.2d 61, 67 [30 Cal.Rptr. 705]; *Coleman* v. *Southern Pacific Co.* (1956) 141 Cal.App.2d 121, 128 [296 P.2d 386].)

In the present case, the positions maintained by plaintiff were not clearly inconsistent; the contradiction which defendant attempts to point out does not in fact exist. The substance of plaintiff's testimony was that she had suffered no pain or disability prior to the accident. She stated that she had never been ill; that she had never been in an accident; that she had never been injured, suffered any head or neck pains, or missed work because of ill health. Such statements do not clearly conflict with a request for an instruction on aggravation of preexisting conditions. The fallacy in defendant's argument is that he erroneously equates the concept of "preexisting condition" with "previous disability." In fact, a preexisting condition does not necessarily involve either disability or pain. Often such conditions are dormant or inactive until a trauma causes the condition to disable the victim. (*Hagy* v. *Allied Chemical & Dye Corp., supra,* 122 Cal.App.2d 361, 367; *Smith* v. *Schumacker* (1938) 30 Cal.App.2d 251, 263 [85 P.2d 967].) Plaintiff's testimony that she had no prior pain or disability does not exclude the possibility that she had a dormant preexisting disc condition. Dr. Sarrian testified that pain and disability need not always accompany disc conditions. He added that variable factors such as the extent of irritation and pressure may create pain in one case and no pain in another. In the absence of a clearly contradictory position, judicial estoppel should not be invoked.

Nor can it be maintained that plaintiff's request for the instruction was untimely. ▮▮ Instructions on issues raised by the evidence and not disclosed by the pleadings may properly be requested before the closing arguments. (Code Civ. Proc., § 607a.) In this case, the evidence as to plaintiff's possible preexisting condition was introduced by defendant's witness the day before closing argument was to commence. Plaintiff requested the instruction the same day that the witness testified. The request was therefore timely.

## III

### THERE WAS SUBSTANTIAL EVIDENCE IN SUPPORT OF A THEORY OF AGGRAVATION

**(6)** In this case there was substantial evidentiary support for an inference that the collision aggravated plaintiff's condition. It was therefore error for the court to refuse the proffered instruction.

*Evidence of a quiescent disc condition.*

The defendant's expert, Dr. Sarrian, testified that the X-rays taken the day of the accident indicated a collapse of the c-5, c-6 vertebral disc space in the neck. He stated his opinion that this condition had existed for several years before the accident, and had stemmed from either some previous injury or from "degenerative wear-and-tear" of the disc. When asked on cross-examination whether plaintiff's narrowed disc space would produce "a lot of pain," Dr. Sarrian answered that it would depend "on how much pressure there is or how much irritation there is," but that such pain "could be expected." He added, "I've seen patients with more narrowing than this who haven't complained."

The plaintiff testified that she had not experienced any pain in the head or neck prior to the accident; that she had never been injured or involved in an accident before the one at issue; that prior to the accident she had been able to work eight hours a day as a seamstress and do her housework.

This testimony would support a reasonable inference that prior to the accident, plaintiff did have a defective disc, but that such defect was quiescent—producing neither pain nor disability.

*Evidence of pain and disability after the accident.*

Plaintiff testified that when the defendant's car struck her automobile, she felt shock, but no immediate pain. Defendant testified that he pulled over after the accident and asked plaintiff if she was all right. He further testified that she appeared to be upset and nervous, but uninjured. He stated that they remained at the scene for a half hour.

Plaintiff stated that within a few hours after the accident, she began to experience pain in the neck and head. That same day, Dr. Wilemon—who became plaintiff's treating physician—performed a physical examination of plaintiff which included the taking of X-rays. Dr. Wilemon, a specialist in orthopedic surgery and rehabilitation, testified that plaintiff's pain was in his opinion real, not feigned. He testified that plaintiff was suffering from a ruptured disc at the c-5, c-6 disc space. He stated that the X-ray showed "a small chip fracture in the center of c-5, 6 posteriorly . . . and just anteriorly." Such fracture was said to indicate a "ligamentous injury where a piece of bone is pulled off with a portion of ligament." He further testified that three months after the accident plaintiff was hospitalized, suffering from radiating pain in the back of the neck, between the shoulder blades and down her fingers. He stated that these areas of the body were served by the c-5 nerve root which he believed was under pressure as a result of the total collapse of the disc space.

As a result of the pain, plaintiff testified that she had to leave her job and could not work at all for one year; she also had difficulty doing her household chores. She stated that she was currently unable to work on other than a part-time basis. Dr. Wilemon stated that it was his opinion that plaintiff's pain and disability would probably be permanent, and could be expected to get worse.

*Evidence of a causal relationship*

The evidence of plaintiff's prior dormant condition coupled with the sequence of events—no pain or disability before the accident, but substantial pain and disability within a few hours thereafter—supports an inference of aggravation.

There is other evidence which reinforces this inference. Dr. Wilemon testified that the accident caused injury to the c-5, c-6 discs, which, in his opinion, resulted in plaintiff's disability. Dr. Sarrian, while asserting that

the disc problem was a preexisting condition, nevertheless admitted that such condition rendered the c-5, c-6 disc area especially susceptible to injury. Taken together, the testimony of these experts allows an inference that the accident caused injury to a disc area that was vulnerable to further harm, thereby aggravating the previously quiescent condition, causing it to become disabling.

Since there was substantial evidence supporting this theory of causation, it was a question for the jury to consider. The trial court's refusal to give an instruction covering it was therefore error.

## IV

### THE CONTENTION THAT THE ERROR WAS NOT PREJUDICIAL IS WITHOUT MERIT

Defendant contends that even if it was error to refuse the instruction, it was not shown to be prejudicial under article VI, section 13 of the California Constitution. This contention must be rejected. As previously stated, it is inherently prejudicial error for a trial court to refuse to give instructions covering each party's theories of the case which are supported by substantial evidence. (*Phillips* v. *G. L. Truman Excavation Co., supra,* 55 Cal.2d 801, 808; *Fish* v. *Los Angeles Dodgers Baseball Club, supra,* 56 Cal.App.3d 620.)

*Phillips* v. *G. L. Truman Excavation, supra,* is dispositive of this issue. The case arose as an action for personal injuries suffered by a lather when he jumped from a scaffold and through an open window after a truck had struck a guardrail protruding from the scaffold. The trial court refused defendant's request that the jury be instructed on contributory negligence. The Supreme Court reversed a jury verdict for plaintiff. In dealing with the question of prejudice, the court stated: "The plaintiff urges that even if error was committed in the refusal to give the instructions, such error was not prejudicial under article VI, section 4½ [now § 13] of the Constitution. Such contention is unsound. If there was evidence of contributory negligence, and we have held there was, even though the trial court thought it was slight as compared to the evidence of negligence of the defendants, then such error in refusing to give the proffered instructions obviously and necessarily was prejudicial. The trial judge had no legal right to weigh the conflicting evidence by refusing the instructions. When he did so the defendants were *denied their constitutional right to a jury trial on the issue.* Such an error cannot

be cured by the beneficent provisions of article VI, section 4½." (Italics added. 55 Cal.2d at p. 808.)

Similarly in the present case, the trial court could not validly determine whether to give an instruction by weighing the conflicting evidence. Despite the fact that the court may have been convinced by the evidence that plaintiff's condition was entirely preexisting, if there was substantial evidence of aggravation—and we have held that there was—then it was prejudicial error to deny plaintiff a jury trial on that issue.

V

PLAINTIFF'S CONTENTIONS REGARDING THE
SUFFICIENCY OF THE EVIDENCE AND THE
INTRODUCTION OF IRRELEVANT EVIDENCE
ARE WITHOUT MERIT

■ Plaintiff's other arguments on this appeal may be disposed of briefly. Plaintiff urges that the trial court erred in allowing "evidence and comment on the name and title 'Clifford Peterson' on the records and reports of Dr. Wilemon and the word 'attorney' on Dr. Stent's records . . . ." Plaintiff argues that such matter was improper because it was "completely immaterial and irrelevant to the issue of damages." The "commentary" to which plaintiff refers is not present within the record, and therefore cannot be reviewed. However, the defense counsel did question plaintiff's witness, Dr. Wilemon, and defendant's witness, Dr. Stent, concerning the reason for the presence of the name and title of plaintiff's counsel on their medical report.

Such questioning was not irrelevant since it was designed to elicit answers reasonably related to the credibility of those witnesses. Evidence relating to the credibility of witnesses is relevant evidence. (Evid. Code, § 210.) The questions called for answers which could help the jury determine the existence and nature of any relationship between the expert witnesses and plaintiff's counsel. Evidence of a business relationship would tend to show the possibility of bias or motive in their testimony. (Evid. Code, § 780.)

Furthermore, the record is devoid of any objection at trial as to the relevancy of this line of questioning. A judgment will not be reversed for

erroneous admission of evidence where at trial no timely and specific objection was made thereto. (Evid. Code. § 353.)

■ Finally, plaintiff's contention that the evidence was insufficient to support the verdict is wholly without merit. Review of a judgment attacked for insufficient evidence must be distinguished from review of a refusal to give instructions covering a party's theory of the case. Where a verdict is attacked for insufficiency, the court's inquiry "... '*begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' (*Primm* v. *Primm* (1956) 46 Cal.2d 690, 693 [299 P.2d 231], original italics.)" (*Stevens* v. *Parke, Davis & Co.* (1973) 9 Cal.3d 51, 64 [107 Cal.Rptr. 45, 507 P.2d 653].) Respondent must show that there is *no* substantial evidence to support the findings.

In the present case, the evidence was obviously in conflict. Nevertheless, the testimony of Dr. Sarrian could support an inference that plaintiff's disc condition was causally unrelated to the accident.

Dr. Sarrian testified that the X-ray taken several hours after the accident showed no signs of muscle spasm; he interpreted this as indicating that plaintiff's neck had not been injured. He also indicated that the white specks which Dr. Wilemon identified as chip fractures were, in his opinion, osteophyte (calcium) formations, indicative of a preexisting arthritis condition. He was strongly of the opinion that plaintiff's condition was entirely preexisting. This was sufficient evidence to support an inference that the accident caused plaintiff no injury or aggravation.

Notwithstanding our rejection of plaintiff's last two contentions, we hold that the court's refusal to instruct upon aggravation of plaintiff's condition was prejudicial error. The judgment must therefore be reversed.

The judgment is reversed.

Ashby, J., and Hastings, J., concurred.