[Civ. No. 23283. Second Dist., Div. One. June 12, 1959.]

JAMES J. LOCKHART, Appellant, v. ANGELO JAMES RINI et al., Respondents.

Paul P. Selvin and Sam Schermer for Appellant.

Hunter & Liljestrom, Kenneth H. Clausen and Gerrold V. Barron for Respondents.

WHITE, P. J.—This action was instituted to recover damages for personal injuries sustained by plaintiff in a collision between the latter's motor vehicle in which he was riding and one owned by defendant transportation company, and operated by their employee, defendant Rini. The cause was tried before a jury which returned a verdict for defend-

ants. Motion for a new trial was denied. From the judgment and the order denying his motion for a new trial plaintiff prosecutes this appeal.

Although plaintiff does not raise or argue the question of the sufficiency of the evidence to support the verdict nevertheless, because his contention that errors in the instructions require a reversal, and defendants' claim that the evidence "overwhelmingly establishes that negligence on plaintiffs part was the proximate cause of the accident," it becomes necessary to narrate the evidence in some detail.

The record reveals that defendant transportation company owned the tractor and semi-trailer which was being operated by its employee, defendant Rini. It had an overall length of 60 feet, with a gross weight of 34 tons. The semi-trailer had a van-type body and was used to haul beer from the Schlitz brewery, near where the accident occurred. Plaintiff owned and was driving a 1948 Chevrolet panel truck, which is about the size of an ordinary passenger sedan. The two vehicles collided on Woodman Avenue, in the Van Nuys area of Los Angeles, on May 11, 1956, at about 6:30 a.m. The accident happened at a point where Woodman Avenue curves. From the point of the accident and looking south, Woodman Avenue runs north and south; and from the point of the accident and looking east, Woodman Avenue runs east and west. In the vicinity of the brewery where the accident occurred Woodman Avenue is a cement two-lane highway. Each lane is 10 feet wide. There is a paved black-top shoulder, approximately 4 or 5 feet wide on each side of the avenue, and at the time of the accident there was a double unbroken white line in the center of Woodman Avenue dividing the two lanes. The curve above referred to is of approximately 90 degrees. At the pretrial hearing on the instant case it was stipulated that at the time of the accident, ". . . the plaintiff was rounding a curve on Woodman Avenue, which approximates 90 degrees, and that he *was on the right-hand side of the road.*" (Emphasis added.) As to respondent Rini, it was agreed " . . . that he *was driving said truck in a northerly direction* on Woodman Avenue and *drove a portion of said Diesel truck on the side of Woodman Avenue for southbound traffic.*" (Emphasis added.) *South* of the curve is a road marked with "Exit Only" and "Do Not Enter" signs. It is conceded that the marked and permitted entrance to the brewery grounds is a road which enters Woodman Avenue *north* of the curve,

and on that portion of the public highway which runs in an east-west direction.

Plaintiff testified he was rounding the above mentioned curve at an estimated speed of 20 to 30 miles per hour, but because of the curve he could not see defendants' vehicle until he was within 10 feet or so of it. When his deposition was taken plaintiff testified the distance was 6 or 8 feet. He testified: "I seen the truck as it just started across this double line." He testified that at that time his speed was about 25 or 30 miles per hour. In answer to a question, "And then what did the truck do after you saw it in that position; keep on traveling straight ahead, or——," plaintiff testified, "Well, we was both so close there wasn't anything we could do. We just hit. That is all there was to it."

Defendant Rini testified that on the night of May 9, he left Van Nuys on a round trip to San Francisco; was transporting beer to that city and was returning with a load of "empties" on the morning of the accident, May 11. While defendant Rini testified he felt "wide awake," he admitted that during the interval between his departure from Van Nuys with the load of beer between 5 and 7 p.m. on May 9, until the time of the accident on the morning of May 11, he had only five hours of sleep in the cab of his truck, though, "I might have stopped and slept a few more hours. I can't recall whether I did, or not." He testified that a few blocks before reaching the place of the accident, he put the truck's signal arm out to indicate a left turn. Defendant Rini was then asked:

"Q. And, now, did you make a left turn at this place where the accident was? A. No; I stated that I went in the exit.

"Q. You just went straight ahead? A. That's right.

"Q. But you still had the left turn signal? A. That's right."

Defendant Rini further testified that when he first observed plaintiff's vehicle, "It was at least between a hundred and a hundred and fifty feet" ahead of him.

Defendant Rini further testified:

"Q. You were going straight into the exit? Now, what did you do when you saw Mr. Lockhart coming around the curve? A. Well, I thought I had time to get through there, and I was changing gears at the time, and all of a sudden, he was right on me, and when I spotted him, I tried to turn, but it didn't help.

"Q. At the time you first saw him, was there room for him to go in front of you, if you had stopped then? A. Might have.

"Q. But you thought you could get that 60-foot truck across in front of him? A. Yes.

"Q. Now, were you pretty sleepy? A. Well, I don't know whether I was, or not. I had been up all night, I would say, probably with a couple hours sleep prior to it, four or five hours, that I had made the statement.

"Q. In other words, it had been 36 hours, at least, since you had been in a bed? A. Yes, sir.

"Q. And you intended to drive directly into that exit driveway? A. Yes, sir."

Defendant Rini further admitted that in a conversation with a police officer at the scene of the accident and shortly thereafter he told the officer, "I was going north on Woodman Avenue, and as I approached the curve just north of Valerio Street, I was in traffic lane in the righthand portion of the road. I was traveling in the extreme right next to the curb. I was over at this point because I was going to make a left turn into a private driveway into the Schlitz Brewery. As I came up to the curve in the roadway, I slowed down and saw this car coming south on Woodman, and it was about one-half way through the turn in the roadway, and all of a sudden, it seemed to me as if it was coming right toward me. The only thing I could think of doing was swerving to my left into the driveway to try and avoid the other car. I guess I didn't make the right decision, because just as I got onto the other side of the street, in the southbound lane, the other car struck the right front of my truck. The impact, of course, shoved the other car around to the right, and I continued on and stopped in the private driveway. I am not sure whether or not the other car was on the wrong side of the street, but I think the point of impact was at this approximate location, indicating a point 4 feet east of the west curb, the west concrete edge of Woodman Avenue. Then I was not going to turn into the private driveway which runs north and south, paralleling Woodman Avenue. I was going to go up and around the curve and turn into the driveway which runs east and west going into the Schlitz Brewery. I only turned into this other driveway, because it seemed to me that the other car was going to run into me, so I was just turning to avoid it."

When asked, "Now, which is the truth, what you have said now, or what you said then?" defendant Rini replied, "What I say now," and in answer to the interrogatory, "Why did

you make that statement to the officer?" the witness replied, "I have no explanation for that, sir."

As his first ground for reversal, appellant urges that the court committed prejudicial error in giving to the jury an instruction on "Unavoidable and inevitable accident."

At the request of respondents, the court instructed the jury that,

"The mere fact that an accident happened, considered alone, does not support an inference that some party, or any party, to this action, was negligent.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"In law we recognize what is termed an unavoidable or inevitable accident. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply denote an accident that occurred without having been proximately caused by negligence.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Even if such an accident could have been avoided by the use of greater foresight, caution or skill than was required in the circumstances in the exercise of ordinary care, still, no one may be held liable for injuries resulting from it.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Bear in mind, however, that if the (either) (any) defendant failed to exercise ordinary care, and if that failure was a proximate cause of the accident in question, then, whether or not such conduct was the sole cause, the accident was not unavoidable, and the defense of unavoidability may not be maintained."

In considering the propriety of giving the same instructions on "Unavoidable and Inevitable Accident," as was given in the case now engaging our attention, our Supreme Court, in the case of *Butigan* v. *Yellow Cab Co.*, 49 Cal.2d 652, 660 [320 P.2d 500], said:

"The instruction is not only unnecessary, but it is also confusing. When the jurors are told that 'in law we recognize what is termed an unavoidable or inevitable accident' they may get the impression that unavoidability is an issue to be decided and that, if proved, it constitutes a separate ground of nonliability of the defendant. Thus they may be misled as to the proper manner of determining liability, that is, solely on the basis of negligence and proximate causation. The rules concerning negligence and proximate causation which must be explained to the jury are in themselves complicated

and difficult to understand. The further complication resulting from the unnecessary concept of unavoidability or inevitability and its problematic relation to negligence and proximate cause can lead only to misunderstanding. . . .

"The giving of a confusing or misleading instruction is, of course, error, and we are of the view that, in the absence of a special situation of the type discussed above (not here pertinent), the use of an unavoidable accident instruction should be disapproved."

■ The court then went on to say (pp. 660, 661): "The determination whether, in a specific instance, the probable effect of the instruction has been to mislead the jury and whether the error has been prejudicial so as to require reversal depends on all the circumstances of the case, including the evidence and the other instructions given. No precise formula can be drawn."

■ While the giving of this instruction was supported by the existing decisions when this trial took place, under the decision in Butigan, we must hold that it was error to give it because there was no element of unavoidable accident established by any evidence which would justify giving it under the Butigan decision.

The question now presented is whether the error was prejudicial.

Respondents rely heavily on section 4½ of article VI of our state Constitution and section 475 of the Code of Civil Procedure. The code section just cited which adopts the constitutional mandate, reads in part as follows:

". . . No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, *instruction,* or defect, unless it shall appear from the record that such error, ruling, *instruction,* or defect was *prejudicial,* and also that by reason of such error, ruling, *instruction,* or defect, the said party complaining or appealing *sustained and suffered substantial injury,* and that a *different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed. There shall be no presumption that error* is prejudicial, or that injury was done *if error is shown."* (Emphasis added.)

■ It must be conceded as contended by respondents that an appellate tribunal has the power to review conflicting evidence for the purpose of ascertaining whether or not an error, as stated in the constitutional provision, has resulted

in a "miscarriage of justice" (*Vallejo etc. R.R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, 553, 554 [147 P. 238]). The rule in this regard is applicable to both civil and criminal cases.

Respondent strongly urges the conclusiveness of the evidence to establish the fact that the proximate cause of the accident here in question was appellant's manifest negligence by reason of his obvious inattention and that the jury so found. However, we are not in accord with respondents' reasoning that the saving grace of section 4½ of article VI of the Constitution and section 475 of the Code of Civil Procedure should come to the rescue of this verdict. We do not understand the aforesaid constitutional and statutory mandate as intended to mean that merely because the evidence may legally be able to stand up under the weight of the verdict, that is sufficient reason in all cases for refusing to set aside a verdict. There is creditable authority for the statement that the phrase "miscarriage of justice" as used in the constitutional provision is applicable to cases where the verdict has resulted from some form of trial in which the essential rights of the plaintiff or defendant were disregarded or denied. The law jealously guards the right of every litigant to a fair and impartial trial, and is vitally concerned that the verdict shall be arrived at by an orderly legal procedure in which the substantial rights belonging to all parties shall be respected.

We have narrated above in detail, the evidentiary features of this case and it would unduly prolong this opinion to restate them here. Suffice it to say that there was evidence that respondent Rini was familiar with the area and the highway wherein he had made many deliveries. That he crossed over the center white lines into a lane reserved for oncoming traffic, for the purpose of entering a driveway plainly marked "Exit Only" and "Do Not Enter." Respondent Rini was driving a truck and trailer 60 feet long at a speed of only between two to five miles per hour. There was a curve ahead of him and the testimony indicates that appellant rounded the curve at a speed of twenty to thirty miles an hour, and there was testimony that because of the curve appellant could not see respondent Rini's vehicle until, according to appellant, ". . . we was both so close there wasn't anything we could do. We just hit." Furthermore, a reading of the statements made by respondent Rini to the police officer and hereinbefore set forth suggests the reasonable conclusion that the jury may well have regarded from portions of such statement that the accident was an "unavoidable occurrence." From an exami-

nation of the entire cause, including the evidence, we are satisfied as hereinbefore stated, that no element of unavoidable accident was established by the evidence which would justify the giving of the challenged instructions under the Butigan decision, *supra,* and that it is reasonably probable that a result more favorable to appellant would have been reached in the absence of the error complained of (*People* v. *Watson,* 46 Cal.2d 818, 836, 837 [299 P.2d 243]). The foregoing conclusion at which we have arrived is strengthened by the fact that the court instructed the jury that, "The mere fact that an accident happened, considered alone, does not support an inference that some party, or any party, to this action, was negligent." This instruction is a questionable one in any case, and certainly does not fit a factual situation such as is involved in the case at bar. It could well have intensified the error committed in giving the instruction on "Unavoidable and Inevitable Accident." (See *Phillips* v. *Noble,* 50 Cal.2d 163, 168 [323 P.2d 385].)

Finally, appellant predicates error in the giving of another instruction. The record reveals that the court instructed the jury that pursuant to the provisions of Vehicle Code, section 530, subdivision (b) : "No vehicle shall at any time be driven to the left side of the roadway under the following conditions:

"1. When approaching the crest of a grade or upon a curve in the highway where the driver's view is obstructed within such distance as to create a hazard in the event another vehicle might approach from the opposite direction."

This was followed by an instruction requested by respondents, and reading:

"You may ask yourself the question: When has a vehicle approached so close to an intersection as to constitute an immediate hazard to another vehicle within the intersection, headed in the opposite direction and intending to make a left turn therein? The answer is that the former vehicle is that close whenever, if a reasonably prudent person were in the position of the driver intending to make the left turn, he would apprehend the probability of colliding with the approaching vehicle were he then to attempt such a turn."

Following this instruction, the court stated: "You will recall that I mentioned 'intersection' here. You, of course, remember the testimony in this case, and there is no intersection involved, but this is a guide by which to determine, and

I believe it fits, as to whether there was an immediate hazard at the time of crossing the white lines.''

It is true, as contended by appellant, that the instruction given was in terms of an intersection, though the trial judge himself stated, ''There is no intersection involved.'' The instruction at best was confusing and misleading, and a reading of Vehicle Code, section 608.6, which is in terms of ''a roadway . . . marked with traffic lanes'' would have furnished a better ''guide'' (to use the language of the trial judge), for the jury. Since, as we have indicated above, the judgment must be reversed, and it is unlikely that the error will be repeated upon a new trial, it becomes unnecessary to pass upon the question of whether the instruction as given was prejudicial further than to say that it did not minimize the error committed in giving the instruction on ''Unavoidable and Inevitable Accident.''

Since there is no allowable appeal from the order denying a new trial, the purported appeal therefrom is dismissed. The judgment is reversed and the cause remanded for a new trial.

Fourt, J., and Lillie, J., concurred.