[L. A. No. 26183. In Bank. May 18, 1961.]

LOUIS J. PHILLIPS, Respondent, v. G. L. TRUMAN EXCAVATION COMPANY (a Corporation) et al., Appellants.

Crider, Tilson & Ruppé and Henry Kappler for Appellants.

Alvin E. Honoroff and Bernard Echt for Respondent.

PETERS, J.—On April 19, 1957, plaintiff, Louis J. Phillips, was working as a lather on the exterior of an apartment then under construction. The building was completely surrounded by a two-level scaffold, one level of which was 8 feet from the ground, and the second level was 12 feet from the ground. Plaintiff was on the second level. It was constructed of 2 by 4 uprights attached to the building by steel braces. Crossbeams of 2 by 4's were attached to the uprights at the proper levels. Two planks of 2 by 12's at each level were laid across the crossbeams making a walkway about two feet wide. The inside edge of the walkway was about two feet from the building. About 30 inches above the walkway, at each level, a 2 by 4 guardrail was bolted to the uprights. When this guardrail was installed on the second level of the scaffold on the side of the building where plaintiff was working at the time of the accident, the carpenter failed to saw off the 2 by 4 at the outside edge of the scaffold and allowed it to project into space about 6 feet from that outside edge of the scaffold. There was an open window in the wall of the apartment near where plaintiff was working. Plaintiff had been working about this building on the scaffold for almost a week before the accident.

The defendant, Truman Excavation Company, had a subcontract to bring in dirt and spread it near the buildings under construction. It had been engaged in this activity for almost a week before the accident, and its trucks had brought in several loads of dirt on the very day of the accident.

On April 19, 1957, Green, a driver for Truman, arrived at the site in question with another load of dirt. He backed his truck within about 3 feet of the scaffold on which plaintiff was working, raising the bed of the truck to unload the dirt. In the course of this operation, and in order to level off the dirt, he drove the truck forward several feet. As he did so the elevated bed of the truck struck the projecting 2 by 4. This shook the scaffold, but did not knock it down or seriously damage it. When plaintiff felt the scaffold shake, he jumped or lunged head first through the open window, landing on his head on the subflooring on the second floor, and suffered injuries to his head, neck and side. He was knocked unconscious.

The testimony of plaintiff and his witnesses and that of defendants' witnesses differ materially and significantly as to what happened immediately prior to and at the time of the accident. Plaintiff testified that about five minutes before the accident he glanced down and saw the truck which was then stationary, and about 3 feet from the scaffold; that the bed of the truck was then down; that he then went back to

work with his back to the truck; that he paid attention only to his own work; that then the scaffold gave a terrific jerk; that for a moment he feared for his life; that he then went through the window; that he "lunged" through. In response to several questions from the court, he made it clear that he was not knocked off the scaffold, but left it voluntarily because he was in fear of his life, and that he did this by lunging or jumping head first through the window. Although he had been working on or about the scaffold for a week prior to the accident, he was positive that he had not seen the projecting 2 by 4; that at no time did he see the truck move; that when he saw the truck, the bed of the truck was down; that while he heard the motor of the truck running prior to the accident, he paid no attention to it, because he believed the truck was a safe distance from the scaffold.

This testimony differs sharply from that of Charles Westenhaver, a defendant, a partner in the firm that was constructing the building, and who gave his testimony by deposition. He testified that he checked the dirt trucks as they unloaded; that he checked and directed the truck that hit the scaffold; that at all pertinent times he was underneath the staging to warn the driver if he got too close to the scaffold; that the dump truck backed up to within three feet of the scaffold on which plaintiff was working, and then elevated the bed of the truck to unload the dirt; that the truck then started to move forward to level the dirt; that the elevated portion of the truck then hit the projecting 2 by 4; that he had not noticed this projecting beam prior to the accident; that the truck stopped immediately, but the impact moved the scaffold about one or two feet; that then plaintiff "went through" the window. He testified that while he did not actually see plaintiff go through the window, he did see plaintiff on the scaffold just prior to the accident. He was asked: "Q. Did you see Mr. Phillips up on the scaffolding just before the bed of the truck hit the 2 x 4? A. Yes; he stopped working and was watching the truck. Q. Was Mr. Phillips standing near this window at that time? A. That is right, standing in back of the building. I don't know just how close to the window he was, but he stopped working and was watching the truck." When some question arose as to how Westenhaver could see plaintiff while he was underneath the scaffold, and after various diagrams of the area and of the scaffold had been introduced, the judge observed "Yes, he [Phillips] was within the range of his [Westenhaver's] observation."

On this evidence the jury brought in a verdict for the plaintiff, judgment was entered, and defendants appeal.

The major contention of defendants is that the trial court erroneously and prejudicially refused to give instructions proposed by the defendants on the issue of contributory negligence. Defendants had properly pleaded this defense, and it was included in the pretrial order. Defendants requested, and the trial court refused to give, three properly drafted instructions on this defense. No other instructions on this issue were given. On the other hand, the court, at the request of plaintiff and over defendants' objections, gave an instruction on imminent peril.

The key question on this appeal is whether there was any substantial evidence on the issue of plaintiff's contributory negligence. If there was evidentiary support for this defense, it was error of a most serious nature to have refused to give the proffered instructions. ▮ It is hornbook law that each party to a lawsuit is entitled to have the jury instructed on all of his theories of the case that are supported by the pleadings and the evidence. It is incumbent upon the trial court to instruct on all vital issues involved. (See *Sills* v. *Los Angeles Transit Lines,* 40 Cal.2d 630, 633 [255 P.2d 795], and cases cited; *Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 623 [255 P.2d 785]; *Rideau* v. *Los Angeles Transit Lines,* 124 Cal.App.2d 466, 469 [268 P.2d 772].)

[▮ Contributory negligence is a basic defense in a personal injury action (*Buckley* v. *Chadwick,* 45 Cal.2d 183 [288 P.2d 12, 289 P.2d 242]; *Courtell* v. *McEachen,* 51 Cal.2d 448 [334 P.2d 870]). A trial court, where there is evidence to support such a defense, may not, by refusing to instruct on it, deprive a party of this defense. If it does, the error in refusing to instruct on it is obviously prejudicial in any case where the evidence admitted in support of the defense, if believed, would support a verdict in favor of the complaining party. (*Clement* v. *State Reclamation Board,* 35 Cal.2d 628, 643 [226 P.2d 897]; *Kelley* v. *City & County of San Francisco,* 58 Cal.App.2d 872, 876 [137 P.2d 719]; *Hoffman* v. *Southern Pacific Co.,* 84 Cal.App. 337, 344 [258 P. 397].)

▮ Where the evidence on the issue of contributory negligence is conflicting, and would support a finding either way, the question is one of fact and not of law, and must be decided by the trier of the facts (*Kirk* v. *Los Angeles Ry. Corp.,* 26 Cal.2d 833 [161 P.2d 673, 164 A.L.R. 1]; *Hudson* v. *Rainville,* 46 Cal.2d 474 [297 P.2d 434]; *Atherley* v. *MacDonald, Young*

*& Nelson, Inc.,* 142 Cal.App.2d 575 [298 P.2d 700]; *Lockhart v. Rini,* 171 Cal.App.2d 293 [340 P.2d 344]).

Thus, the basic question presented in this case is whether or not there was evidentiary support for the defense of contributory negligence. If there was such support, it was prejudicial error not to have given the proffered instructions.

 While the evidence as to the negligence of defendants may appear to some of us to be strong, and the evidence as to the contributory negligence of the plaintiff to be slight, there is some evidence of a substantial character to support such a defense. That being so, the defendants were entitled to instructions on this issue, and the refusal to give such instructions was prejudicial error.

The evidence shows that plaintiff was an experienced lather. He knew that the truck was within 3 feet of the scaffold. According to the testimony of Westenhaver, "just before" the truck hit the scaffold plaintiff had stopped working and was watching the truck. At that time the bed of the truck was raised. While plaintiff testified that he did not know of the projecting guardrail, he admitted that he had been working on and about this very scaffold for a week. It is a reasonable inference that, in the exercise of reasonable care, he should have seen such an obvious defect in the construction of the scaffold. If he had seen it, he would have known of the obvious danger from the upraised bed of the truck if that truck should move forward, and should have taken some precautions to avoid that danger. This is some evidence of contributory negligence. (*Prescott v. Ralphs Grocery Co.,* 42 Cal.2d 158, 162 [265 P.2d 904].) As the court stated in this last cited case, at page 163: "The italicized portion of the instruction states the law incorrectly, since plaintiff could have been charged with negligence not only if she was aware of the danger present and did not take proper precautions to avoid it, but also if, in the exercise of ordinary care, she should have been aware of that danger and failed to take such precautions."

There is other evidence on the issue. Plaintiff admits that he was not knocked off the scaffold, but exercised volition when he jumped or lunged through the window. The scaffold only moved a foot or two as a result of the impact. It did not fall. There were substantial guardrails around the scaffold. Whether plaintiff acted reasonably or unreasonably in voluntarily leaving a place of safety and diving head first through the window was a question of fact that should have been submitted to the jury. It is true that the hitting of the

scaffold may have appeared to plaintiff to create an emergency, and to place him in a position of imminent peril. If so, the care required of him would not be as great as if he had had time for deliberation. But, nevertheless, whether he did or did not act reasonably, even though there was an emergency, was a question of fact.

The trial court properly instructed on the doctrine of imminent peril. But the giving of that instruction only aggravated the error in refusing the contributory negligence instructions. Under the facts of this case, the imminent peril instruction was applicable only because the reasonableness or unreasonableness of the plaintiff's conduct was an issue in the case. But the reasonableness of the plaintiff's conduct was at issue only because contributory negligence was at issue. The instruction was relevant only on that issue. The imminent peril instruction is intended to lay down the standard of care that a party is required to exercise in certain circumstances, and may, under those circumstances, relieve a plaintiff of the charge of contributory negligence. But the instruction on imminent peril has no relevancy here except in connection with contributory negligence. Negligence is an indispensable corollary to an instruction on imminent peril. Thus to instruct on imminent peril and not to have instructed on contributory negligence, where that was an issue, served to accentuate the error in refusing to give the proffered instruction on contributory negligence.

The plaintiff urges that even if error was committed in the refusal to give the instructions, such error was not prejudicial under article VI, section 4½, of the Constitution. Such contention is unsound. If there was evidence of contributory negligence, and we have held there was, even though the trial court thought it was slight as compared to the evidence of negligence of the defendants, then such error in refusing to give the proffered instructions obviously and necessarily was prejudicial. The trial judge had no legal right to weigh the conflicting evidence by refusing the instructions. When he did so the defendants were denied their constitutional right to a jury trial on the issue. Such an error cannot be cured by the beneficent provisions of article VI, section 4½.

There were other errors of a substantial nature committed by the trial court. These errors related to certain rulings of the court excluding certain evidence proffered by the defendants.

Plaintiff claimed that as a result of the accident he injured

his head, neck and side. He claimed that as a result of these injuries his ability to work as a lather had been impaired and had cut down his productivity. He offered evidence of such loss of earnings. Thus, on the issue of damages, the cause of this loss of productivity was an important issue.

On cross-examination it developed that plaintiff had had a second accident after the one here involved. The trial court refused to permit the defendants, on cross-examination, to inquire into the facts and effects of this second accident, on the ground that the only question involved was the nature and effect of the accident under consideration. The ruling was erroneous. Defendants were obviously entitled to show, if they could, that plaintiff's loss of earnings resulted from the second accident and not the first. (*Davis* v. *Franson*, 141 Cal. App.2d 263, 272 [296 P.2d 600] ; *Behr* v. *County of Santa Cruz*, 172 Cal.App.2d 697, 704 [342 P.2d 987].)

Error was also committed in refusing to allow defendants to impeach the plaintiff by testimony showing that, contrary to his testimony on direct, he had had bursitis within five years of the accident. This was relevant also on the issue of the cause of the loss of earnings.

Plaintiff had testified that he was in good health prior to the accident; that during the five-year period prior to it he had no physical disability of any kind ; and that, outside of a cold, he had not seen a doctor for a physical disability in the five years preceding the accident. He was then asked, specifically, if during that period he had ever been troubled with bursitis, and he stated that he had not. He was then asked if during that period he had ever sought medical care for such condition and he replied "No, not in the five years [prior to the accident]."

Thereafter defendants called Richard Surdez, the supervisor of California Physicians Service, and custodian of the records of that organization, who produced certain records purporting to relate to plaintiff. These were carbon copies of original forms prepared by Dr. Young and Dr. Shapiro, plaintiff's doctors, and were dated September and October 1954. Surdez testified the carbon copies were kept in the regular course of business of the organization and were sent to it by attending physicians whenever claims were submitted to the service. The reports were offered in evidence. The trial court sustained an objection on the ground of immateriality. Thereafter, the defendants called Dr. Shapiro. He testified that his personal records of 1954 had been destroyed,

but identified the signatures on two of the California Physicians Service records as his. But the trial court sustained all objections to questions trying to bring out that in 1954 he had treated plaintiff for bursitis. Defendants then offered to prove that Dr. Shapiro had in fact treated the plaintiff for bursitis in 1954. Thereafter, defendants renewed their offer, but objections were sustained.

These reports were clearly admissible. There can be no doubt that they were duly authenticated as the business records of California Physicians Service. They were dated and signed by two of plaintiff's doctors. They were made in the regular course of business, at or near the time of the event. (Code Civ. Proc., § 1953f; *Loper* v. *Morrison,* 23 Cal.2d 600, 608 [145 P.2d 1]; *Nichols* v. *McCoy,* 38 Cal.2d 447, 449 [240 P.2d 569].) They were relevant. In the first place, there was a clear conflict between this written report of Dr. Young and his testimony given at the trial on behalf of plaintiff. In the second place, the report of Dr. Shapiro contradicted plaintiff's testimony that he had not been treated for bursitis in the five years before the accident. Dr. Shapiro's excluded report showed that he had treated plaintiff on nine different occasions in September 1954, and five times in October of that year for "Acute subdeltoid bursitis, right shoulder."

Not only did these reports contradict Dr. Young in a very material respect, but the questions directed to Dr. Shapiro and the reports were aimed at discrediting plaintiff's testimony relating to the cause of his loss of earning capacity, and to support defendants' contention that bursitis and the second accident were the cause of the loss of earning power and not the accident. As such, the reports and questions were clearly admissible. (*Strauss* v. *Buckley,* 20 Cal.App.2d 7, 9 [65 P.2d 1352].)

These multiple errors were obviously prejudicial. The first one deprived the defendants of their basic defense; the second one deprived defendants of material evidence in diminution of damages. This being so, a reversal is required.

The judgment is reversed.

Gibson, C. J., Traynor, J., Schauer, J., White, J., and Dooling, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Vallée in the opinion prepared by him for the District Court of Appeal, *Phillips* v. *G. L. Truman Excavation Co.,* (Cal.App.) 9 Cal.Rptr. 25.