[Civ. No. 7919.   Fourth Dist., Div. One.   Aug. 19, 1966.]

DONALD S. RICHARDSON, Plaintiff and Appellant, v. NELLO OLIVERI et al., Defendants and Respondents.

Hervey & Mitchell and James E. Hervey for Plaintiff and Appellant.

McInnis, Focht & Fitzgerald, Roscoe S. Wilkey, Holt, Macomber & Rhoades and John S. Rhoades for Defendants and Respondents.

BRAY, J.*—Plaintiff appeals from judgment after jury trial in favor of defendants in an action for damages for personal injuries.

### QUESTIONS PRESENTED

1. Should the issue of contributory negligence have been submitted to the jury?
2. Alleged error in instructions requiring proof of relationship between, and control by, defendants.
3. Was the instruction concerning insurance proper?

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## EVIDENCE

Defendant Nello Oliveri (Nello) leased certain land in San Diego from the Signal Oil Company. On the land were two separate buildings: the H & R Garage, rented by Nello to defendant Tietz and operated by Tietz and later by Tietz and defendant Hopper, and a gasoline station operated by Nello. Defendant Dennis Oliveri is the son of Nello and worked for him at the gasoline station. Plaintiff was a friend of the Oliveris and often visited the filling station and borrowed tools from them. The evidence concerning the relationship between defendants was confusing. Oliveri's lease prohibited subleasing. The arrangement between Nello and Tietz was oral. Nello and Dennis could work on their own cars in the garage and could get parts from the garage even if Tietz wasn't there. That is why Nello had a garage key. The profits of the garage were split among Nello, Tietz and Hopper, one-third to each. Tietz and Nello agreed on the rates to be charged for repairs, and Mrs. Oliveri checked the books, although Tietz had his own bookkeeper. Nello had certain items of equipment in the garage such as the spark plug cleaner, a drum "and things of that nature" which Tietz used. Both Oliveris sometimes worked in the garage and Tietz and Hopper sometimes worked on the gas pumps at the filling station. Nello agreed to refer to the garage customers coming to the station and needing repairs. Plaintiff had previously had repairs made at the garage which were charged to his bill at the station.

The drama begins with plaintiff and Dennis agreeing that Dennis would accept plaintiff's motorcycle in exchange for a 1954 Lincoln owned by Dennis but registered in Nello's name. Dennis delivered the Lincoln to plaintiff. It was then ascertained that the motorcycle would not operate because of a defective rotor cap in the distributor. The boys attempted to find a rotor cap at various gas stations but without success. Finally they took the motorcycle to Nello's station, arriving there at approximately 10:15 p.m., after the station had closed for the night. Tietz had previously closed and locked the garage.

Defendant Hopper had told plaintiff that a Chevrolet rotor cap would work on the motorcycle and that there was one in the garage. Nello gave Dennis a key to the garage. Plaintiff, Dennis and the latter's friend Burtis Perry entered the garage and searched through a number of boxes in which rotor caps were kept, but those they found, when tried on the motorcycle outside, would not operate. To the right of the cabinet in

which the rotor caps were kept and against the wall at the back of the workbench, were two tool chests, another cabinet and some boxes containing spare parts. Plaintiff had said that he would look for a brakelight switch. Dennis said, ''Look around.'' In the lower drawer of one of the tool chests was a device which plaintiff thought was a pull switch of some sort. This device was a ''cable cutter'' or ''explosive cutter'' used for cutting nylon straps in ejection seats in military aircraft. It is actuated by pulling a handle attached to a lanyard or cord which explodes a cartridge which in turn drives a chisel against an anvil at the opposite end of the device from the lanyard. Plaintiff pulled this cord and the device exploded, severing his finger, blinding his right eye and fracturing the orbital bone over the eye.

Tietz had obtained the cutter from a friend who had stolen it from the Air Force and had placed it in the garage. Tietz was acquainted with the device and knew that it was explosive and for military use only.

### 1. CONTRIBUTORY NEGLIGENCE

Plaintiff contends that there was no evidence of contributory negligence and hence the court erred in instructing on it. ■ It is elementary that it is the duty of the trial judge to instruct on a party's theory of the case if there is any substantial evidence to support that theory. (*Phillips* v. *G. L. Truman Excavation Co.*, 55 Cal.2d 801, 806 [13 Cal.Rptr. 401, 362 P.2d 33].) ■ ''Where the evidence on the issue of contributory negligence is conflicting, and would support a finding either way, the question is one of fact and not of law, and must be decided by the trier of the facts.'' (*Phillips* v. *G. L. Truman Excavation Co., supra,* 55 Cal.2d 801, 806.) ■ Moreover: ''. . . the evidence must be viewed by this Court in the light of the oft-repeated rule set forth in *Brewer* v. *Simpson,* 53 Cal.2d 567, 582 [2 Cal.Rptr. 609, 349 P.2d 289] . . . giving to the respondent on an appeal the benefit of the most favorable view of the evidence and inferences which could reasonably have been taken by the jury.'' (*Robinson* v. *Harrington,* 195 Cal.App.2d 126, 130, 131 [15 Cal.Rptr. 322].)

■ There was enough substantial evidence of contributory negligence to require a jury determination. After failing to find a rotor cap, plaintiff stated that he decided to look for a brakelight switch and began rummaging in other boxes. There was evidence to the effect that he was not looking for a switch, but merely rummaging around. When he found the

cutter he asked what it was. He made no effort to read the label on it, which stated ''Ordnance Associates Incorporated.'' A reasonable inference from the evidence could be drawn that the device was labeled ''cutter.'' The lighting in the garage was sufficient for one to read a book. Plaintiff testified that he had an approximation of the meaning of the word ''ordnance'' as having to do with explosives. He did not notice any label but had he seen the word ''ordnance'' on the device he probably would not have pulled the cord.

As said in *Phillips, supra,* at page 807, quoting from *Prescott* v. *Ralphs Grocery Co.,* 42 Cal.2d 158, 162 [265 P.2d 904] : '' '[P]laintiff could have been charged with negligence not only if [he] was aware of the danger present and did not take proper precautions to avoid it, but also if, in the exercise of ordinary care, [he] should have been aware of that danger and failed to take such precautions.' ''

''Negligence may consist not only in failure to look, but also in failure to *observe* what is in plain sight.'' (2 Witkin, Summary of Cal. Law (7th ed. 1960), § 332, p. 1531.)

There was evidence that the device in no wise resembled a light switch for a motorcycle, although there was evidence to the contrary. Whether plaintiff acted reasonably or unreasonably in, as he said, ''messing around with something he knew nothing about'' and ''snooping'' and pulling the handle on a device that was unknown to him, and apparently to the others present, without examining it to see if it were labeled, was a question of fact which properly was submitted to the jury.

Plaintiff relies heavily on *Borenkraut* v. *Whitten,* 56 Cal.2d 538 [15 Cal.Rptr. 635, 364 P.2d 467], for his contention that plaintiff's actions could not constitute contributory negligence. There the plaintiff was standing at a service station watching the attendants trying to start her stalled auto by pouring a large quantity of gasoline into the carburetor. A backfire occurred, causing flames to shoot out of the carburetor, injuring the plaintiff. The court held that an instruction on contributory negligence should not be given ''when the only evidence on that issue was that plaintiff failed to take precautions against action on the part of the defendant which she had no reasonable basis to believe would be performed and which, if performed, would be negligent.'' The situation there was entirely different than in the case at bench. There the plaintiff did not actively participate in the act which caused the injury. She was not an actor therein. Here, plain-

tiff, without making any attempt to determine what the object he was dealing with was, pulled the lanyard. He was the actor who caused the accident. Nor are the spring-gun trespasser cases of *Hidden* v. *Malinoff*, 174 Cal.App.2d 845 [345 P.2d 499], dealing with instructions on assumption of risk, and *Brautigam* v. *Brooks*, 227 Cal.App.2d 547 [38 Cal.Rptr. 784], dealing with a rear-end collision with the defendant's car, in point.

The giving of instructions on contributory negligence was not error.

## 2. RELATIONSHIP AND CONTROL

After instructing that plaintiff must prove by a preponderance of the evidence that defendants or any of them were negligent, and that such negligence was the proximate cause of the accident, the court stated: ''Secondly, he must prove that the defendants, or that defendant Dennis Oliveri was the servant or the agent or the employee of the defendant Nello Oliveri. And he must prove that a business relationship of a joint venture existed between the defendants Nello Oliveri and Henry Tietz. And he must prove that the defendants or any of them controlled the garage portion of the premises which has been designated as the H & R Automotive Service. Now, that of course means this, his contention is that the defendant Nello Oliveri and Henry Tietz are joint venturers in the garage and control the garage business. Henry Tietz controls a portion of it, he contends. That is, the plaintiff contends, and Nello Oliveri controls it by and through his agent as well as by himself. On that issue the plaintiff has the burden of proving it. And he must also prove that he was a business invitee or a licensee on the premises at the time of the accident. He contends he was a business invitee rather than a licensee. But the defendants contend, of course, that he at best was a licensee.''

The court again instructed that one of the questions to be determined was whether Tietz and Nello were engaged in a joint venture in the garage and whether Tietz and Nello had the right to management, operation or control of the garage business. The court then gave the test for determining whether they intended to carry on jointly a business enterprise, and that if the jury found such joint enterprise, before it could find Tietz responsible for the acts of Nello or Dennis, it must find that those acts were within the scope of the joint venture business.

The instructions then stated: '' [T]he next issue for you to

consider and determine is whether or not Dennis Oliveri was the agent, servant or employee of Nello Oliveri and at the time of the accident in question acting within the scope of his authority as such agent."

The court further instructed: "You are instructed that the defendant Henry Tietz is not responsible for the act of the co-defendant Nello Oliveri unless it is established by the plaintiff that the defendant Henry Tietz was at the time of the accident engaged in a joint venture with Nello Oliveri or unless it is established that the defendant Henry Tietz was himself personally negligent in the manner in which he kept and operated his garage, if you find it a separate business."

In addition to the instructions abovementioned, there were instructions on the duty of care, the requirement of extreme caution in the matter of explosives, that if the jury should find negligence upon the part of more than one defendant, the determination of liability of each must not be influenced by comparing such negligence, that because there were three defendants it necessarily followed that from that fact alone if one defendant was liable all were liable.

Plaintiff contends that there were five theories upon which he could have recovered against one or more of the defendants:

1. That plaintiff could have recovered against Tietz because he was negligent proximately causing the accident.

2. That he could have recovered against both Tietz and Nello because they were engaged in a joint enterprise whose negligence proximately caused the accident.

3. That plaintiff could have recovered against Dennis because Dennis knew that the cutter was in the garage and failed to warn plaintiff that it was there and thereby plaintiff was injured.

4. That recovery could be had against Nello also on this theory because Dennis was acting within the scope of his employment as Nello's agent.

5. That plaintiff could have recovered against Nello on the theory that he knew of the presence of the cutter in the garage and negligently failed to warn plaintiff of its presence when he gave Dennis the keys to the garage.

Plaintiff contends that the instructions as a whole do not cover all the theories which plaintiff now states could be drawn from the evidence. Taking the instructions as a whole, they were broad enough to cover a finding of liability on the part of any or all of the defendants although not to cover all

the theories now raised by plaintiff. Unfortunately for plaintiff, he offered no instructions except on the joint venture theory.

▮ Before an appellant may complain of the lack of an instruction on a specific issue, he must have offered such an instruction to the trial court. See *Barrera* v. *De La Torre,* 48 Cal.2d 166, 170 [308 P.2d 724]; 2 Witkin, Cal. Procedure (1963) p. 1780.

Plaintiff complains that the court's instruction on preponderance of the evidence required him to prove absolutely elements which he was entitled to prove alternatively on alternative theories of liability. A reading of the instructions as a whole does not support this contention. See *Hellman* v. *Los Angeles Ry. Corp.,* 135 Cal.App. 627, 645 [27 P.2d 946, 28 P.2d 384], where a portion of the instructions required that in order to find the plaintiff contributorily negligent, the jury had to find that her negligence was the proximate cause of the accident; the court stated that from a reading of the instructions as a whole the jury could not have been misled by the use of the word ''the'' instead of ''a.''

Plaintiff offered no instructions on the alleged alternate theories. If the instructions given were not as clear on this subject as might be, plaintiff has himself to blame. See *Mula* v. *Meyer,* 132 Cal.App.2d 279, 286 [282 P.2d 107].

During deliberations, the jury returned to the courtroom for further instructions. They asked (1) that negligence and contributory negligence be defined; (2) that the care required with explosives and firearms be defined; (3) that business invitee and licensee and the duty to each be defined; and (4) whether consideration of contributory negligence should be deferred until primary negligence was established.[1]

These questions asked by the jury would indicate that it was not misled by the instructions which plaintiff contends required proof of elements serially instead of alternatively.

### 3. INSURANCE

▮ The court instructed the jury as follows: ''When we are speaking of parties in the case, the ones remaining, I wish to instruct you and to remind you again that no insurance company is a party to this action and that whether any party is insured has no bearing whatsoever on any issue that you must decide. Therefore, the oath you took as jurors requires that you refrain from any inference, speculation or discussion

---

[1]The jury also requested copies of the instructions given in response to these queries. This request was properly denied, the court offering to give them all the instructions if they desired them.

about insurance, or whether any of the parties were insured.''

Plaintiff, in proof of his claim of a joint venture by Tietz and Nello, brought out from Tietz the fact that as a part of Nello's contribution to the garage business, Nello was to provide the insurance coverage for the garage activities by his policy until it expired, at which time they would get a separate policy for the garage.

The court then instructed the jury: ''Well, members of the jury, I will instruct you at this time concerning the subject that has been mentioned, that no insurance company is a party to this action. And whether any party to the action is insured or is not insured, is not an issue in this case. It has no bearing whatsoever on the outcome of the case, or any issue in the case. The oath you took as jurors requires that you refrain from any inference or from any speculation or from any discussion about insurance. However, if the evidence shows an occasion, or on any occasion other than at this trial and prior to the trial, any of the parties to the case that made a statement or statements throwing any light on the relationship between the parties, you are of course not required as jurors to ignore such a statement merely because the statement contains some mention of insurance. The statement, if any, that has been made, may be considered by you as jurors for any light that it might throw upon the understanding or arrangement that these parties may have had concerning their business relationship, which is apparently in contention between the parties. And I would expect you to follow that instruction to the best of your ability and completely ignore the mention of insurance, because we are not involved. That is not an issue in the case.'' While this statement is a bit contradictory, it is clear that the court meant that the jury could consider the insurance situation in determining the question of joint enterprise, but that the jury must not find liability merely because the parties were insured. While the instruction given at the end of the trial could have been clearer, it did not mean, in view of the previous instruction and the evidence concerning insurance, that the jury was not to consider insurance on the question of joint enterprise. The instruction complained of is BAJI No. 139.1 and it was quoted in *Causey* v. *Cornelius,* 164 Cal.App. 2d 269, 274 [330 P.2d 468].

There was no error in giving the instruction.

Judgment affirmed.

Coughlin, Acting P. J., and Whelan, J., concurred.