EDMUND G. BROWN JR. Attorney General SUSAN DUNCAN LEE Supervising Deputy Attorney General
THE HONORABLE ALBERTO TORRICO, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following questions:
1. Is an international express delivery and logistics company that provides no commercial passenger transportation a "transportation company" within the meaning of article XII, section 7, of the California Constitution?
2. Is such a company prohibited from offering its private corporate passenger aircraft for the flying needs of state elected or appointed officials at the "fair market value" of the flights as determined for gift-reporting purposes under the California Political Reform Act? *Page 2 
 CONCLUSIONS
1. An international express delivery and logistics company is a "transportation company" within the meaning of article XII, section 7, of the California Constitution, notwithstanding that its operations include no commercial passenger transportation services.
2. The company may offer its private corporate passenger aircraft to state elected or appointed officials at the "fair market value" of the flights as determined for gift-reporting purposes under the California Political Reform Act.
 ANALYSIS
We are informed that a company does business, both nationally and internationally, in the field of express package and freight delivery and logistics. In this capacity, the company provides pick up, transportation, delivery, and tracking services for documents, packages, and other freight, and it owns or leases a fleet of vans, trucks, and aircraft outfitted to transport such cargo. The company's commercial operations do not include any form of passenger transportation. Like many other large businesses, however, the company owns or leases small private passenger aircraft to provide air transportation service for the company's executive staff in order to enhance its executive travelers' comfort and convenience while avoiding delays and uncertainties associated with commercial air transportation.
We are further informed that the company wants to make its corporate passenger aircraft available to various elected or appointed state officials at rates matching the flights' "fair market values" as determined by the Fair Political Practices Commission ("FPPC") for gift-reporting purposes.[1] We are asked to address two questions: First, would such a company come within the definition of a "transportation company" as that term is used in article XII, section 7
of California's Constitution? And second, if it is a "transportation company" for purposes of Section 7, may the company offer the use of its aircraft to state officials for a "fair market value" rate. *Page 3 
We begin with an examination of Section 7, which provides:
 A transportation company may not grant free passes or discounts to anyone holding an office in this state; and the acceptance of a pass or discount by a public officer, other than a Public Utilities Commissioner, shall work a forfeiture of that office. A Public Utilities Commissioner may not hold an official relation to nor have a financial interest in a person or corporation subject to regulation by the commission.
A similar restriction was adopted at the Constitutional Convention of 1879 as article XII, section 19, [2] one of several measures intended to limit the influence of railroads on state politics.[3] At the time the ban was adopted, America had just seen the completion of its long-awaited transcontinental railroad, [4] and along with it an extraordinary rise in the power and influence of the great railroad magnates. While railroad interests were powerful all over the country, the situation was particularly acute in California. By the mid-1870s, the Southern Pacific company owned more than 85 percent of the railroad track in the state, owned more than 10 percent of the land in the state, and was the state's largest employer as well as its largest taxpayer.[5]
"[T]he railroad so far overshadowed any possible competitors in point of number of men employed, invested capital, and value to a community, that it stood alone in terms of crude social power."[6]
Social discontent with the conglomerate's brute uses and abuses of power directly fed a movement to form a convention to revise the state constitution in an effort to exert some control over the railroads.[7]
One of the products of that convention was the *Page 4 
provision forbidding transportation companies from giving "free passes or discounts" to state officials.
Much has changed since then. California's economy is no longer dependent on the railroad magnates; new technology has transformed the way people work, travel, and interact; and California law holds public officials to much stricter standards of ethical dealings and financial transparency. Nevertheless, despite several proposals to remove the free-transportation ban from the Constitution, the Legislature and voters have so far left it intact.
With this background in mind, we proceed to the threshold question: Is a package-delivery company a "transportation company" to which the prohibition applies?
Is a Package-Delivery Business a "Transportation Company"?
Although few authorities have interpreted the meaning and scope of the term "transportation company" as it is used in Section 7, we know that courts have construed Section 7 to encompass commercial passenger airlines and bus lines, notwithstanding that such businesses did not exist when the provision was initially adopted in 1879.[8] In addition, judicial opinions routinely refer to freight shipping businesses as transportation companies.[9] We also find strong indications within article XII that businesses devoted to transporting property (as opposed to people) qualify as transportation companies.[10] *Page 5 
Furthermore, if we advert to the usual definitions of the words involved, we have no doubt that the express package-delivery enterprise we discuss here would commonly be understood as a company" whose business is "transportation."[11] However, we have found no cases addressing whether Section 7's ban on "free passes or discounts" extends to package-delivery and shipping companies that deal exclusively with freight and engage in no commercial transportation of passengers.
We note that an express-delivery company has the capacity to offer special benefits services to public officers in at least three different forms: (1) the company could offer to ship public officers' packages, documents, or other physical materials, or to expedite delivery thereof, at no charge or at reduced rates; (2) the company could transport public officers on whatever seating is available on its cargo aircraft; or (3) as here, it could offer to make its private corporate aircraft specially available to public officers. In the first two instances, the capacity to offer special treatment may be unique to companies in the express-delivery business; but in the third case — our case — it is not. It has become increasingly common in recent years for businesses and wealthy individuals engaged in a wide variety of non-transportation enterprises to purchase or lease aircraft and to retain the necessary flight crews, thereby facilitating their business travels while providing their executives and agents with greater convenience, independence, communications, service, and comfort than might be afforded on regular commercial airline flights. We think it likely that the capacity to offer transportation of this kind to public officers is shared by a broad spectrum of business enterprises and individuals. Nevertheless, Section 7, by its terms, restricts only those businesses that qualify as "transportation companies."[12]
Some interested parties have suggested that the term "transportation companies," as used in article XII, should be construed to include only companies that are regulated by the Public Utility Commission, arguing that Section 7's ban on gifts is intended to prevent only such regulated businesses from improperly influencing the PUC's (and the Legislature's) oversight of their rates, routes, schedules, and other operations — oversight *Page 6 
that the Legislature and the PUC do not currently exercise with respect to the express shipping company in question here.[13] We believe, however, that this approach is not sound.
It is true that the principal focus of Article XII is the PUC. But the language of Section 7 is simply too broad to support the constitution that it applies only to companies regulated by the PUC. Section 7 forbids transportation companies from granting free passes or discounts to "anyone holding an office in this state" (italics added), and it outlaws the acceptance of such proffered gifts by anyone who is "a public officer." We are not free to assume that the drafters' omission of the clause "subject to PUC regulation" was accidental, nor are we free to read the clause into a sentence where it has been left out. To the contrary, we are constrained to assume that the drafters deliberately employed the phrase in one context and excluded it from the other, and that they did so with the intention of conveying two different ideas.[14]
Accordingly, we are persuaded that the degree to which the express-shipping provider in question does or does not come within the PUC's regulatory purview is immaterial to the determination of the company's status as a "transportation company." Rather, we believe that a business's identity as a "transportation company" for purposes of the Section 7 ban on free or discounted transportation turns on whether the company is engaged in the business of transportation, whether of passengers or of property.[15] *Page 7 
We find additional support for our view in a 1992 decision, SquawValley Ski Corporation v. Superior Court, [16] in which the Court of Appeal considered closely parallel facts. The court agreed that the petitioner ski-lift operator had been exempted by statute from PUC regulation as a common carrier, but held that the lift operator nevertheless remained a common carrier and a transportation company for other purposes and, specifically, for purposes of tort liability.[17]
Here, of course, the package-delivery company's exemption from PUC regulation derives from federal preemption rather than from state statute, but we don't think that fact makes the Court's analysis and conclusion any less applicable to our circumstances. Applying the SquawValley court's reasoning to our circumstances, we conclude that the company's exemption from PUC regulation of its routes, schedules, and fares does not take it outside the realm of "transportation companies" for purposes of Section 7.
We therefore conclude that the express package and freight delivery company in question is indeed a "transportation company" within the meaning of Section 7, notwithstanding that Congress has, through federal preemption, eliminated the PUC's regulatory authority over the company's intrastate operations, and notwithstanding that the company provides no commercial passenger services.
Does Use of the Company's Private Jet Constitute a "Free Pass orDiscount"?
Having determined that a package-shipping company is a "transportation company," we next consider whether the particular benefit offered here — use of the company's corporate jet at "fair market value" — constitutes a "free pass or discount" within the meaning of Section 7.
To begin with, we reject the suggestion that Section 7 should be narrowly construed as applying only to a transportation company's regularly scheduled day-to-day services for which regular public fares are set. Under that theory, the rule against granting "free passes or discounts" would prohibit only a reduction or waiver of a company's usual public fares for commercial transportation services, and the term "discount" or "free pass" would be read to presuppose the existence of a regular public *Page 8 
fee schedule. In the case of a passenger-transportation company, this narrow construction would mean only that the company could not offer office holders a reduced rate or a free pass for travel on the company's commercial passenger trains or planes or buses. In the case of a freight company, it would mean only that the company could not provide office holders with shipping or delivery services at a reduced rate or at no charge.
We cannot accept such a cramped reading of the constitutional ban on gifts of transportation. A seat on the corporate jet of a package-delivery company is no less "transportation" than a seat on a regularly scheduled flight of a commercial passenger airline — or, to put the point in its historical context — access to a private railroad car attached to a freight train is no less "transportation" than a seat on one of the passenger cars of a commuter train. If the ride is offered for free, it amounts to a prohibited "free pass" within the meaning of section 7 in any case.
Here, however, the ride would not be offered for free. It would be offered at "fair market value." While there may be a range of definitions for the term "discount," for present purposes we need not define it too precisely. Given the history of the rule and the plain meaning of the words, we are satisfied that, in this context at least, "discount" means something other than "fair market value." Therefore we conclude that the offer does not violate the rule against "free or discount passes."
Of course, it is not always easy to agree on what constitutes "fair market value" for a good or service. Fortunately, that is not a problem here. The California Political Reform Act imposes various gift-limit rules and gift-reporting requirements on certain public officials.[18]
The FPPC, as the agency charged with administering that California Political Reform Act, [19] has developed methods for determining the "fair market value" of a variety of gifts — including gifts of free or discounted transportation — for purposes of clarifying the statutory gift restrictions and measuring compliance therewith.[20] We believe that the FPPC's existing guidelines are an appropriate measure of the "fair market value" of transportation services for this purpose as well.
Accordingly, we find that a transportation company may offer its private corporate passenger aircraft to state elected or appointed officials at the "fair market value" of the flights as determined for gift-reporting purposes under the California Political Reform Act.
[1] For purposes of enforcing gift-limit rules and gift-reporting requirements for public officers pursuant to the California Political Reform Act (see Govt. Code §§ 82028, 89503), the FPPC has promulgated regulations providing a method for calculating the "fair market value" of certain gifts, including gifts of free or discounted transportation. (2 Cal. Code Regs. § 18946.6; cf. 2 Cal. Code Regs. § 18944.2.)
[2] The current language of the restriction, and its relocation to section 7, were approved by voters in the 1974 general election.
[3] See John K. McNulty, Background Study — California ConstitutionArticle XII, Corporations and Public Utilities 100 (State of Cal. 1966).
[4] See Union P. R.R. Co. v. U.S., 99 U.S. 402, 418 (1979) (railroad legally completed Nov. 6, 1869).
[5] Ken DeBow John C. Syer, Power and Politics in California 25-27 (6th ed., Addison-Wesley 2000); Spencer C. Olin, Jr., California Politics1846-1920: The Emerging Corporate State 32 (Fraser 1981).
[6] George E. Mowry, The California Progressives 12 (Quadrangle 1968).
[7] DeBow Syer, Power and Politics in California at 28; Mowry, TheCalifornia Progressives at 18; Olin, California Politics 1846-1920 at 34, 37-38; Leonard Pitt, Ed., California Controversies: Major Issues inthe History of the State 82 (Harlan Davidson 1987) ("Naturally, the Southern Pacific was a major topic at the convention.")
[8] People v. Western Air Lines, Inc., 42 Cal. 2d 621, 635, 641
(1954); 67 Ops.Cal.Atty.Gen. at 83.
[9] See, e.g., Bekins Van Lines v. State Bd. of Equalization,62 Cal. 2d 84, 90 (1964) (furniture moving and storage business described as transportation company); Arteaga v. Brink's, Inc.,163 Cal. App. 4th 327, 334 (2008) (armored-car business described as transportation company); Hull v. Cason, 114 Cal. App. 3d 344, 361-362
(1981) (trucking business referred to as transportation company); CliftonCattle Co. v. Thompson, 43 Cal. App. 3d 11, 15 (1974) (livestock shipper described as transportation company); Lockhart v. Rini,171 Cal. App. 2d 293, 295 (1959) (beer-hauling business described as transportation company).
[10] See, e.g., art. XII, § 3 (defining "public utilities" as, interalia, "private corporations . . . that own, operate, control, or manage a . . . system for the transportation of people or property" (italics added)) and § 4 (authorizing Public Utilities Commission (PUC) to fix rates and establish rules "for the transportation of passengers andproperty by transportation companies" (italics added)).
[11] See Black's Law Dictionary (8th ed. 2004) at 298 (defining "company" as "[a] corporation — or, less commonly, an association, partnership, or union — that carries on a commercial or industrial enterprise"); id. at 1537 (defining "transportation" as "[t]he movement of goods or persons from one place to another by a carrier").
[12] This opinion is limited to a consideration of the scope of Section 7. Therefore this opinion does not consider any questions that might arise from a non-transportation company's offer of transportation to a state official.
[13] Although the PUC once regulated rates and routes for at least the intrastate ground-transportation component of express shipping businesses (see, e.g., Pitney-Bowes, Inc. v. State of Cal., 108 Cal. App. 3d 307,311-312 (1980)), such regulation was later held to be preempted by federal law. (Fed. Express v. Cal. Pub. Utils. Commn., 936 F. 2d 1075
(9th Cir. 1991).) Congress thereafter broadened the scope of that federal preemption by statute (See Federal Aviation Administration Authorization Act of 1994, 49 U.S.C.A. § 48101 et seq. (2003); cf. 1996 Stat. ch. 1042 (Assembly 1683). We are informed that the PUC currently exercises no regulatory control over the rates, routes, and schedules of express package delivery companies, and that any state safety and permit requirements pertaining to their California ground operations fall within the purview of the Department of Motor Vehicles and the Highway Patrol. (See Veh. Code §§ 34600-34672.)
[14] Horwich v. Super. Ct., 21 Cal. 4th 272, 290 (1999) (citing Peoplev. Woodhead, 43 Cal. 3d 1002, 1010 (1987)) (when provision uses term in one place and omits it in another, term "should not be inferred where it has been excluded.") See also 91 Ops.Cal.Atty.Gen. 55, 58 and n. 13 (2008).
[15] As our Supreme Court has observed, "transportation" is a broad and inclusive term, the meaning of which has expanded over time in response to new developments in the course of human progress. People v. W. AirLines, Inc., 42 Cal. 2d at 635-641.
[16] 2 Cal. App. 4th 1499, 1513 (1992).
[17] Specifically, the court reasoned that "a transportation company may be exempt from regulation by the PUC as a common carrier under [Pub. Util. Code] sections 211 and 216 but may occupy the status of common carrier for tort liability purposes under Civil Code section 2168." Id.
[18] See Govt. Code §§ 82028, 89503.
[19] Govt. Code § 83112.
[20] 2 Cal. Code Regs. § 18946.6; cf. 2 Cal. Code Regs. § 18944.2. *Page 1